**Appendix A**
**Complaint for Declaratory, Injunctive, and Monetary Relief**
Submitted in Support of Pro Se Form, Sections III–IV
Filed by John K. Pedersen, Pro Se Plaintiff
United States District Court
Northern District of Alabama – Southern Division

## PRELIMINARY STATEMENT

> **"A thief thinks every man steals."**
> — Danish Proverb

**Opening Statement**

Stealing is taking something that doesn't belong to you. It's a nasty business, especially if you are the one getting robbed. I daresay many, if not most would rather be robbed outright than be forced to participate in it against themselves. Being tricked into giving someone, for no consideration, some of your most valuable possessions without realizing what you've done until they rub your nose in it down the road brings stealing to a whole new level. That's what it is to experience theft by deception. The realization, "I've been had", is more than showing up at your empty parking space and feeling the helpless frustration and anger. Its humiliation. It's subjugation to the one who wronged you. Well, I really have "been had".

At Buc-ee's, stealing is taken seriously- and for good reason. You can't run a successful retail operation with rampant stealing of your products and services going on. Shoplifters are prosecuted, *as they should be*. Employees who steal items, or for that matter, steal time by lax or lazy behavior, are let go-*as they should be*.

One thing I noticed as a deli employee at Buc-ee's, however, is that concern for and about stealing is not occasional or punctuated as a timely reminder-it is ubiquitous, a constant drumbeat in the air, a functional, continual, operational, *raison d'être* implicit in the pep talks of the Beaver Huddle or the stern gaze of a manager who enquires as to how many pretzel cups you were able to produce that day (while also expected and "held accountable" to do several other functions-at the same time). Stealing paranoia envelops the entire work culture. Why?

It's projection. The paranoia is cultural because the theft is structural.

By a single click in a signature box, Buc-ee's Ltd. has managed to trick over nine thousand

employees into giving them, before a single day's work, some of their most valuable possessions on earth: their freedom of speech, their right to privacy, their access to justice, even their valuable ideas and expressions, and the "right" to claim all these possessions now belongs to them.

Before an employee completes their first shift, they are required to sign a proprietary rights agreement- long, dense, binding, and unreviewable. There is no legal explanation provided to any significant degree. No negotiation. When you sign it, it disappears. You will not see it again. You can't use the guidelines it provides for resolving disputes; by the next day, you've forgotten all the obligations and rules completely. The "Agreement" wasn't for you- it was for them. In that single moment, you have given them something of incalculable value, and been tricked into doing it:

Your voice. Your likeness. Your speech. Your ideas. Your silence. Your authorship. Your privacy. Your access to court.

All of it. Signed away - not by force, but trickery, by providing circumstances to get your signature which engineer your ignorance and ensure your compliance. .

That's not standard onboarding. That's a con.

This is why the culture is soaked in suspicion. Buc-ee's has gotten away with something, so they assume everyone else is trying to do the same thing.

When I disclosed I had created original intellectual property — off the clock, on my own time — I was told not just to surrender it, but destroy it. No hearing. No arbitration. Just a corporate directive, issued under a contract I could no longer read by people who never wanted me to understand it in the first place.

In the 19th century, men were deceived into signing contracts that conscripted them into maritime service. They signed in saloons, then woke in chains. Buc-ee's uses urgency. Click-throughs. Legalese. The result is the same. Your signature becomes an instrument of surrender.

I no longer work for Buc-ee's. But they still claim ownership of my ideas, my voice, my name. This Complaint is not about wages or working conditions. I liked my job and didn't want to leave. This complaint is about a confiscatory work culture which tramples on the Constitutional rights of those who (literally) belong to it.

Buc-ee's will say this is a money grab, someone trying to steal from them. The record and my desire to work things out through friendly interaction say otherwise. The damages in this action

are a fraction of the value of what they attempted to take from me. The damages underscore that value, but they do not comprise or bound it.

Having now had time to review and be advised as to the significance of the Agreement(s) I signed. I do, however, seek Constitutional remedies, so nobody else who loves Buc-ee's like me will ever have to get a letter like the one I got this past March 24.

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the First, Fifth, and Thirteenth Amendments, and 42 U.S.C. § 1983. The Court has authority to issue declaratory relief under 28 U.S.C. § 2201 and to adjudicate related state law claims under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Alabama, including Plaintiff's employment at Buc-ee's Store #0043 in Leeds, Alabama, and all related communications, disclosures, and adverse actions described herein, as further detailed in Section III of this Complaint.

## II. FACTUAL ALLEGATIONS

Plaintiff began working at Buc-ee's on June 14, 2023, and as a condition of employment, was required to sign the company's 2023 proprietary rights and waiver agreement as part of an onboarding process affording no opportunity for independent legal counsel, negotiation, or timely review (Exhibit A).

On or about February 24, 2025, Plaintiff was issued a revised and significantly expanded employment agreement titled Confidentiality, Proprietary Rights, Non-Solicitation, Arbitration, and Jury Trial and Class Action Waiver Agreement ("2025 Agreement"). Plaintiff was required to sign the agreement within 72 hours over a weekend, under explicit threat of immediate termination, also, as prior, without any opportunity to negotiate terms or obtain legal counsel.

On February 24, 2025, Plaintiff sent a timely and good faith email to Buc-ee's legal department requesting clarification of the "Pre-existing Rights" clause in Section 2.g of the 2025 Agreement. Buc-ee's did not respond, then, or since. This silence left Plaintiff without the legal

understanding necessary to make an informed decision regarding the rights and obligations the company was imposing (Exhibit D).

In good faith compliance with the 2025 Agreement's Section 2.g, and in complete unawareness of the 2023 version of the Agreement which was hidden from Plaintiff the moment he signed it in his initial onboarding process, Plaintiff submitted a formal written Notification of Pre-existing Rights on February 25, 2025, via email and mail, disclosing original intellectual property developed entirely off the clock (Exhibit B).

---

On March 24, 2025, violative of the 2025 Agreement here described, Buc-ee's Assistant General Counsel issued a destruction demand ordering Plaintiff to erase his disclosed work. This demand was made without:

- A written notice of dispute,

- The 60-day informal resolution period,

- Any conference or hearing,

all of which were required under Section 11.a.iii of the 2025 Agreement (Exhibit C).

Plaintiff replied on April 2, 2025, requesting copies of both the 2023 and 2025 agreements and stating that he could not comply with the destruction demand without informed legal review. Buc-ee's responded by transmitting the agreements but did not provide any further explanation or clarification—only a restatement of its original demand (Exhibits E and F).

Between April 3 and April 10, 2025, Plaintiff submitted several written inquiries to Buc-ee's legal department in a continuing effort to seek clarity and resolve the dispute in good faith. These included:

- A request for clarification regarding whether Plaintiff would be compensated for the labor of destroying his own materials (Exhibit I);

- A question concerning Plaintiff's legal obligations post-employment (Exhibit K);

- A request for informal, off-the-record conversation to avoid escalation (Exhibit H).

Buc-ee's responded to none of these requests with substantive engagement or explanation. The company either ignored them or issued conclusory replies that restated its position without addressing the questions or requests presented (Exhibits J and L).

On April 18, 2025, Plaintiff submitted a two-week notice of resignation. This decision was made under duress, as Plaintiff reasonably feared imminent termination and loss of accrued benefits in light of Buc-ee's legal pressure, refusal to clarify obligations, and continued insistence on compliance with the destruction demand. Plaintiff's employment officially ended on May 2, 2025.

On May 9, 2025, following his resignation, Plaintiff sent a final good faith communication to Buc-ee's legal department, summarizing the legal and personal impact of the company's actions and reiterating his continued need for clarification. No response was received. This marked the end of Plaintiff's efforts to seek understanding or resolution outside of legal action (Exhibit M).

## IV. CLAIMS FOR RELIEF

**Count I – By Declaratory Judgment: Using an Unenforceable Employment Agreement to Bind Obligations in Violation of Law (28 U.S.C. § 2201)**

Plaintiff alleges that a justiciable legal controversy exists between himself and Defendant concerning the continued enforceability of the 2025 Agreement. Although Plaintiff is no longer employed by Buc-ee's, the company continues to assert legal authority over him under the Agreement's terms, including obligations relating to intellectual property, post-employment speech restrictions, and indefinite control over Plaintiff's name, likeness, and identity. These obligations constitute the ongoing legal restraint giving rise to this claim.

Plaintiff brings this count requesting the Court address the question of enforceability. Plaintiff does not ask the Court to assume the truth of subsequent claims, or even to consider them at all, to grant this relief. He seeks a legal determination based solely on the Court's review of the Agreement itself. The Agreement—including its arbitration clause and post-employment provisions—was cited by Defendant's legal counsel as the basis for a formal destruction demand issued on March 24, 2025 while Plaintiff was still employed. That demand remains in effect and unrevoked following Plaintiff's resignation on May 2, 2025.

This claim is brought pursuant to 28 U.S.C. § 2201(a), which authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought," in any "case of actual controversy within its jurisdiction."

Because Plaintiff is currently under ongoing contractual obligations Defendant continues to assert by the 2025 Agreement, including those raised in its March 24, 2025 destruction demand, a genuine and continuing dispute exists concerning those obligations and their implications for Plaintiff's constitutional and civil rights. Plaintiff, by the Court's judgment, seeks declaration of his rights vis-a-vis the waivers and assignments contained in the Agreement.

Because this action arises under the laws and Constitution of the United States, this Court is petitioned under 28 U.S.C. § 1331. Plaintiff accordingly seeks a declaratory judgment to determine the enforceability of the Agreement as a threshold matter, as permitted by § 2201.

This request is not to ignore or avoid any condition precedent. Plaintiff alleges only that without judicial determination, its terms remain a source of legal uncertainty and ongoing coercive harm. Plaintiff therefore respectfully seeks threshold relief under 28 U.S.C. § 2201 by declaratory judgment that the Agreement is unenforceable in whole based not on Plaintiff's opinion or any subsequent claim, but solely on the merits, by the Court's (not Plaintiff's) review.

**Count II – Involuntary Servitude (Thirteenth Amendment; 42 U.S.C. § 1983)**

The 2025 Agreement, particularly Sections 2.a, 2.b, and 2.g, required Plaintiff to assign ownership of his intellectual output—including works conceived and created independently, off the clock, and even after termination—to Defendant without compensation. On March 24, 2025, Defendant's legal department issued a destruction demand compelling Plaintiff to erase his own intellectual property under threat, without adjudication, notice, or any prior mention of compensation.

The language of the Agreement shows the proprietary claim foundational to the destruction demand is not confined to the period of active employment. Plaintiff remains contractually bound, under legal threat, by provisions that extend beyond termination and purport to apply indefinitely—even for the remainder of his natural life. These provisions constitute strong indicia that Buc-ee's asserts a private legal regime resembling a Master-Slave relationship—a structure that subordinates the employee permanently, without limitation, and without true consent.

Though the information Plaintiff utilized in his creations is all publicly available, and items under the destruction order could have been produced by a non-employee of Buc-ee's who observes store operations and products, Plaintiff must now bring this action to escape the continuing reach of an "Agreement" he did not clearly and fully understand at the time he

signed—an Agreement which holds him an employee for life. Though now no longer employed, Plaintiff cannot be regarded as a guest who visits Buc-ee's, or, for that matter, a person with freedom of speech and privacy—not because he possesses any confidential information or trade secrets or items from the store he did not purchase and therefore remain Buc-ee's property, but because he signed the Agreement, making whatever he can think about, write down, or construct which "pertains to Buc-ee's business" the sole property of Buc-ee's.

Plaintiff, a former employee, remains legally shackled—held in an indefinite state of bondage distinguishing him from a free citizen—the very condition the Thirteenth Amendment was enacted to prohibit.

This claim is actionable under *United States v. Kozminski*, 487 U.S. 931 (1988), and 42 U.S.C. § 1983.

---

**Count III – First Amendment and Privacy Violations (42 U.S.C. § 1983 and Alabama Common Law)**

Sections 3 and 4 of the 2025 Agreement purport to grant Buc-ee's a perpetual, irrevocable license to Plaintiff's name, voice, image, and likeness, while simultaneously imposing a lifetime gag clause forbidding any "disparaging" remarks about the company. These provisions are not time-limited, reciprocal, or subject to review. They apply both during and after employment, without any definition, exception, or mechanism for challenge or withdrawal.

These provisions function to silence Plaintiff permanently and prohibit truthful speech about his work experience. They operate as a form of prior restraint, enforce a viewpoint-based restriction, and impose a waiver of core First Amendment protections under circumstances of economic coercion and unequal bargaining power.

In addition, these clauses effect a continuing invasion of privacy by purporting to grant Buc-ee's lifelong ownership and control over Plaintiff's name, likeness, and identity—without compensation, consent, or limitation. They disregard Plaintiff's autonomy, dignity, and the basic right to determine how his personal image is used. The Agreement further obligates Plaintiff to indemnify Buc-ee's for any third-party claim arising from the company's own misuse or distortion of Plaintiff's identity.

These terms are actionable under 42 U.S.C. § 1983 and Alabama common law protecting against the tortious appropriation of likeness and invasion of privacy. See *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 223 (4th Cir. 2019).

### Count IV – Due Process Violation (Fifth and Fourteenth Amendments)

On March 24, 2025, Defendant issued a destruction demand that bypassed all procedural safeguards. Plaintiff received no written notice of dispute, no opportunity to engage in the 60-day informal resolution process, and no hearing or adjudication before being ordered to destroy personal intellectual property that had been voluntarily disclosed in good faith.

This unilateral demand disregarded the procedural steps mandated by Section 11.a.iii of the 2025 Agreement, which required a formal notice of dispute, a 60-day response period, and an informal settlement discussion before any enforcement action. Buc-ee's contravention of its arbitration requirements revealed its use of the Agreement not as a mutual contract but as a tool of unilateral enforcement—a legal weapon of convenience designed to serve expedience over principle, invoked when the circumstances favor the company and bypassed when they do not.

The absence of any procedural safeguards—especially in the context of a demand that implicated Plaintiff's intellectual property, identity, and livelihood—deprived him of a meaningful opportunity to be heard. This failure is a violation of Plaintiff's constitutional right to due process under the Fifth and Fourteenth Amendments.

This claim is actionable under 42 U.S.C. § 1983 and supported by principles set forth in *Board of Regents v. Roth*, 408 U.S. 564 (1972).

### Count V – Fraudulent Inducement and Constructive Misrepresentation

Section 11.viii of the 2025 Agreement contains standardized language stating that Plaintiff had the opportunity to consult independent legal counsel, fully understood the Agreement's terms, and signed without hesitation or confusion. These statements were materially false. Their insertion by Defendant created the appearance of informed and voluntary consent.

In reality, Plaintiff was given only 72 hours to sign the Agreement over a weekend under threat of termination. A red "your response is past due" notification appeared toward the end of this period, increasing pressure to quickly sign. Plaintiff was not permitted to negotiate, review the terms with legal counsel, or retain a copy of the Agreement after signing, as the Agreement immediately vanished from view the moment Plaintiff checked the signature block in the HR portal.

The false assurances in Section 11.viii were relied upon by Defendant in its March 24 letter as proof of consent, despite the fact that consent was never meaningfully obtained.

These provisions functioned—and continue to function—to create the illusion of legal formality while concealing a coercive and procedurally unconscionable process. They were essential to the formation of a document that Plaintiff now challenges as violative of his constitutional and civil rights.

Statements asserting Plaintiff had time to consult independent legal counsel and had no confusion, made while orchestrating a signing process which precluded both for this 15-page document containing dense, ponderous, technical legal terminology, constitutes fraudulent inducement under Alabama common law, which recognizes a claim for fraud where a party knowingly makes a false representation of a material fact, with the intent to induce reliance, and the other party relies to their detriment. See Ala. Code § 6-5-101 (1975) ("Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, constitute legal fraud."). It also constitutes constructive misrepresentation under equitable principles.

This claim is actionable under Alabama law and supports Plaintiff's request for declaratory, injunctive, and monetary relief.

---

**Count VI – Conspiracy to Defraud (Alabama Common Law)**

The fraudulent inducement described above was not the result of isolated misrepresentation. It was the product of coordinated design and implementation by multiple individuals acting on behalf of Defendant, including legal, HR, IT, and management personnel. These individuals all participated in the drafting, enforcement, and concealment of the Agreement's most coercive clauses—including Section 11.viii—knowing they were false statements intended to create the appearance of informed, voluntary consent where none existed.

This conduct is conspiracy to defraud under Alabama law. See *Weatherly v. Hunter*, 510 So. 2d 151 (Ala. 1987) ("Conspiracy to defraud may be inferred from the nature of the acts done and the relations of the parties."). The injury alleged herein was not accidental, but coordinated and systemic—and the resulting harm to Plaintiff's autonomy, authorship, and access to justice was the foreseeable product of that collusion.

Despite Plaintiff's assertion in his "Notification of Pre-Existing Rights" about his inability to gain adequate information in the time provided for the 2025 signing, no individual within the company disclaimed or corrected the misrepresentations, or, for that matter, offered remedy. Rather, Buc-ee's continued to rely upon these false statements, including those in the 2023 Agreement, in asserting and assuming Plaintiff had given knowing and voluntary consent to waive constitutional rights, assign intellectual property, and accept permanent identity and

speech restrictions, when he had not done so because of conditions and circumstances the Defendant imposed.

The coordinated failure to correct these misrepresentations, the ongoing enforcement of the Agreement despite the company's own procedural violations, and the use of a disappearing contract with irrevocable language, all point to a systemic pattern of behavior undertaken by agreement—not accident.

Under Alabama law, a civil conspiracy occurs when two or more individuals combine to accomplish an unlawful purpose or a lawful purpose by unlawful means. The agreement need not be express; it may be inferred from conduct, mutual interest, and coordinated action. See:

- *Weatherly v. Hunter*, 510 So. 2d 151 (Ala. 1987);

- *Ex parte Alabama Dept. of Transportation*, 764 So. 2d 1263, 1270 (Ala. 2000);

- *GE Capital Aviation Servs., Inc. v. Pemco World Air Servs., Inc.*, 92 So. 3d 749, 763 (Ala. 2012).

The conspiracy to defraud gives legal cover to what is, in substance and effect, a private regime of forced silence, post-employment servitude, and compelled forfeiture of identity, authorship, privacy, and even self-determination, granting Buc-ee's the "irrevocable" right to use Plaintiff's likeness and name "for any lawful purpose"—for life.

The resulting harm to Plaintiff's autonomy, authorship, and access to justice was not incidental—it is the foreseeable product of conspiracy.

This claim is actionable under Alabama common law and supports Plaintiff's request for declaratory, injunctive, and monetary relief.

---

**Count VII – Constructive Discharge (Alabama Common Law)**

Plaintiff verbally tendered his two-week notice of resignation on April 18, 2025, under conditions amounting to constructive discharge. Following Buc-ee's March 24, 2025 destruction demand, Plaintiff made repeated good faith efforts to understand his legal obligations and seek resolution. Buc-ee's refused to engage in any meaningful dialogue and instead maintained a posture of escalating legal threat.

Plaintiff reasonably feared imminent termination and the forfeiture of accrued benefits due to the Defendant's posture and actual local circumstances. Given the company's refusal to clarify or retract its coercive demands, Plaintiff concluded continued employment was untenable and

resigned under compulsion, not because Plaintiff had a better job or because he wanted to leave because he didn't like working at Buc-ee's anymore.

Under Alabama law, an employee is constructively discharged when working conditions become so intolerable that a reasonable person in the employee's position would feel compelled to resign. The circumstances leading to Plaintiff's resignation meet this standard.

This claim supports Plaintiff's request for declaratory, injunctive, and monetary relief.

## V. DEMAND FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

1. A declaratory judgment that the 2025 Agreement is void in whole, based solely on the merits, by the Court's review;

2. In the alternative, or pending the aforesaid, a permanent injunction enjoining Buc-ee's from enforcing any clause of the 2025 Agreement against Plaintiff, including but not limited to:

- Any destruction order or forfeiture of intellectual property;

- Any post-employment labor or identity-related obligations;

- Any attempt to restrict Plaintiff's lawful speech or public commentary;

- Any uncompensated, proprietary use of Plaintiff's name, image, or likeness for any purpose or occasion whatsoever.

3. An award of compensatory and punitive damages in the amount of $20,000,000, justified as follows:

This figure is not based on speculative loss or novelty of invention, but on the measurable, documentable harm caused by Defendant's coercive demand and ongoing assertion of ownership over Plaintiff's creative work and legal identity.

The amount sought reflects the financial impact of the attempted confiscation, the magnitude of constitutional injuries arising from compelled silence and post-employment servitude, and the economic and reputational damage resulting from Plaintiff's forced disassociation from his own authored material.

The ideas and concepts disclosed by Plaintiff—including a nut-cone automation design and a workforce optimization strategy—possess independently verifiable financial value to Defendant or any similarly structured enterprise, regardless of authorship attribution:

- Plaintiff's automation concept, if implemented across Buc-ee's national store footprint, would yield estimated labor cost savings exceeding $22 million per year for the nut-cone process alone;

- Plaintiff's workforce optimization strategy, or a similar approach to attrition reduction, could reduce turnover-related rehiring costs well in excess of $12 million annually.

Defendant did not reject these ideas. It attempted to erase Plaintiff's authorship, destroy his documentation, and assert unilateral dominion over the material without payment, recognition, or legal process.

The March 24, 2025 destruction demand was not a neutral contract dispute. It was a coercive act aimed at permanently severing Plaintiff from his own creative labor, freeing Defendant to exploit the disclosed work without challenge.

The claim amount reflects only a portion of the actual harm and is a conservative estimate given the severity of the constitutional, economic, and reputational injuries incurred. What Defendant demanded was not merely the uncompensated acquisition of intellectual property. It was the obliteration-under color of contract- of Plaintiff's right to exist in relation to his own authored work.

To demand the destruction of writings, ideas, and original labor is to demand the symbolic destruction of personhood. Such a demand, backed by threat and framed by legal contract, is functionally indistinguishable from a private claim of ownership over an individual's intellectual identity.

Plaintiff asserts this constituted not merely moral overreach, but a legally actionable form of private domination- an act akin to involuntary servitude.

This level of injury, viewed through the lens of modern civil litigation, aligns with federal civil rights verdicts awarding tens or even hundreds of millions of dollars in cases involving severe constitutional, emotional, and reputational harm. See, e.g., *Juarez v. AutoZone Stores, Inc.*, No. 08-cv-00417 (S.D. Cal. 2014) (jury awarded $185 million in punitive damages for gender and pregnancy discrimination); *Chopourian v. Catholic Healthcare West*, No. 09-cv-02916 (E.D. Cal. 2012) (jury awarded $167 million for retaliation and harassment following protected disclosures).

4. An order directing Defendant to revise and resubmit to this Court any future version of its employment agreement in compliance with Constitutional protections and applicable Alabama employment law, including but not limited to:

- Removing provisions that purport to assign intellectual property or identity rights in perpetuity without compensation or informed consent;

- Ensuring that all required disclosures are plainly worded and reasonably accessible to employees prior to signature;

- Certifying to the Court that such agreements include a verifiable mechanism to guarantee informed consent through access to independent legal review and clear opt-out provisions for non-compulsory clauses;

and such other relief as the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

## VII. ATTACHED EXHIBITS

The following Exhibits, referenced throughout this Complaint, are submitted herewith:

- **Exhibit A** – 2023 and 2025 Buc-ee's Agreement(s)

- **Exhibit B** – Plaintiff's Notification of Pre-Existing Rights

- **Exhibit C** – March 24, 2025 Destruction Demand

- **Exhibit D** – February 24, 2025 Email Requesting Clarification

- **Exhibit E** – Plaintiff's Response to Buc-ee's Destruction Demand (April 2, 2025)

- **Exhibit F** – Defendant's April 2, 2025 Reply to Plaintiff's Response

- **Exhibit G** – Plaintiff's April 2, 2025 Reply Asserting Need for Informed Consent

- **Exhibit H** – April 3, 2025 – Plaintiff's Good Faith Attempt to Resolve Dispute

- **Exhibit I** – April 10, 2025 – Plaintiff's Inquiry Regarding Compensation for Destruction

- **Exhibit J** – April 10, 2025 – Defendant's Reply on Compensation

- **Exhibit K** – April 10, 2025 – Plaintiff's Inquiry Regarding Non-Employee Destruction

- **Exhibit L** – April 10, 2025 – Defendant's Refusal to Address Hypotheticals

- **Exhibit M** – May 9, 2025 Final Good Faith Communication

## VIII. SUPPORTING MEMORANDUM OF LAW

A Memorandum of Law is submitted contemporaneously with this Complaint, expanding upon Plaintiff's claims for relief and supporting the allegations of constitutional, statutory, and common law violations cited herein.

**Respectfully submitted,**

**John K. Pedersen**
Pro Se Plaintiff
1080 Montevallo Road, #220
Leeds, Alabama 35094
pjump56@gmail.com
717-891-0607
May 24, 2025