FILED

2025 May-28 PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## Table of Exhibits

| Exhibit | Title | Description |
|---|---|---|
| A | 2023 and 2025 Employment Agreements | Proprietary rights and waiver agreements signed June 14, 2023 and February 24, 2025 |
| B | Notification of Pre-Existing Rights | Submitted February 25, 2025; discloses independently developed intellectual property |
| C | March 24, 2025 Destruction Demand | Letter from Buc-ee's Assistant General Counsel ordering destruction of Plaintiff's work |
| D | February 24, 2025 Email Requesting Clarification | Plaintiff asks for explanation of "Pre-existing Rights" clause in 2025 Agreement |
| E | Plaintiff's Response to Buc-ee's Destruction Demand (April 2, 2025) | Reply seeking access to signed documents and asserting good faith |
| F | Defendant's April 2, 2025 Reply to Plaintiff's Response | Reissue of agreements and request for confirmation of compliance |
| G | Plaintiff's April 2, 2025 Reply Asserting Need for Informed Consent | Affirms need for legal review before acting on destruction demand |
| H | April 3, 2025 – Plaintiff's Good Faith Attempt to Resolve Dispute | Request for informal phone conversation to avoid escalation |
| I | April 10, 2025 – Plaintiff's Inquiry Regarding Compensation | Plaintiff asks whether destruction labor would be compensated |
| J | April 10, 2025 – Defendant's Reply on Compensation | States Plaintiff would be paid hourly rate for time, but not for item value |
| K | April 10, 2025 – Plaintiff's Inquiry Regarding Non-Employee Status | Asks if post-employment destruction would still be compensated |
| L | April 10, 2025 – Defendant's Refusal to Address Hypotheticals | Declines to respond to question about non-employee scenario |

| M | May 9, 2025 Final Good Faith Communication | Plaintiff's final attempt to resolve dispute; explains constructive discharge and resignation context |

# Exhibit A

## 2023 and 2025 Employment Agreements

- June 14, 2023: "Confidentiality, Proprietary Rights, Non-Solicitation, and Jury Trial and Class Action Waiver Agreement"

- February 24, 2025: "Confidentiality, Proprietary Rights, Non-Solicitation, Arbitration, and Jury Trial and Class Action Waiver Agreement"

## CONFIDENTIALITY, PROPRIETARY RIGHTS, NON-SOLICITATION, AND JURY TRIAL AND CLASS ACTION WAIVER AGREEMENT

This Confidentiality, Proprietary Rights, Non-Solicitation, and Jury Trial Waiver Agreement ("**Agreement**") is entered into by and between Buc-ee's Alabama II, LLC (sometimes referred to herein as **"Company"** or **"Employer"**), and Employee named below ("**Employee**"), and is effective as of the date signed. Company and Employee shall be known collectively as "**the Parties**" and individually as a "**Party**."

In consideration of Employee's future or continued employment by Company, which Employee acknowledges to be good and valuable consideration for Employee's obligations hereunder, Company and Employee hereby agree as follows:

1. Confidentiality.

    a.    Confidential Information. Employee understands and acknowledges that during the course of employment, Employee may become aware of trade secrets and similarly protected proprietary and confidential information about Company business not generally known to the public (including but not limited to recipes, preparation techniques, marketing plans and strategies, financial data or records, sales information, cost of sales, margins, rebates, planned business activities, acquisitions, expansions, product development, proposals, blueprints, store designs, purchasing patterns, business processes and strategies, training methods, vendor, or supplier information, purchasing information and contracts, vendor or supplier contractual terms, relationships with other entities, and other proprietary business information) (**"Confidential Information"**). Employee must not use Confidential Information for Employee's benefit or the benefit of any other person or entity and must not disclose any Confidential Information to anyone outside of the Company without prior authorization from the Company.

    b.    Disciplinary Action.  Employee acknowledges that misuse or unauthorized disclosure of Confidential Information not otherwise available to persons or firms outside Company is cause for disciplinary action, including termination of employment.

    c.    PIN Information.  Employee must keep PIN and other similar personal identification information confidential. Employee may not share this information with any other employee.

    d.    Confidential Information Developed During Employment. Employee understands and agrees that Confidential Information developed by Employee in the course of employment by Company shall be subject to the terms and conditions of this Agreement as if Company furnished the same Confidential Information to Employee in the first instance.

    e.    Notice under the Defend Trade Secrets Act of 2016.  Notwithstanding any other provision of this Agreement, Employee will not be held criminally or civilly liable under any federal or state trade secret law for any disclosure of Confidential Information, including any trade secret, that (a) is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney if such disclosure is made solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if

such filing is made under seal.  Further, if Employee files a lawsuit for retaliation by Company for reporting a suspected violation of the law, Employee may disclose Company's Confidential Information, including its trade secrets, to Employee's attorney and may use the Confidential Information in the court proceeding if Employee files any document containing the Confidential Information under seal and does not disclose it, except pursuant to court order.

f.     Duration of Confidentiality Obligations.  Employee understands and acknowledges that Employee's obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon Employee first having access to such Confidential Information (whether before or after Employee begins employment by Company) and shall continue during and after employment by Company until such time as such Confidential Information has become public knowledge, other than as a result of Employee's breach of this Agreement or breach by those acting in concert with Employee or on Employee's behalf.

2.  Proprietary Rights.

a.     Work Product. Employee acknowledges and agrees that all writings, works of authorship, technology, inventions, discoveries, ideas and other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived or reduced to practice by Employee individually or jointly with others during Employee's employment by Company and for a period of one year after termination of employment and relating in any way to the business or contemplated business, research or development of Company (regardless of when or where prepared or whose equipment or other resources is used in preparing) and all printed, physical and electronic copies, all improvements, rights and claims related to the foregoing, and other tangible embodiments thereof, as well as any and all rights in and to copyrights, trade secrets, trademarks (and related goodwill), patents and other intellectual property rights arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefor, and continuations, divisions, continuations-in-part, reissues, extensions and renewals thereof (collectively, **"Work Product"** and as further defined below), shall be the sole and exclusive property of Company.

i.     Definition of Work Product. In addition to the definition provided by paragraph 2(a), for purposes of this Agreement, Work Product includes, but is not limited to, plans, publications, research, strategies, techniques, processes, agreements, documents, contracts, terms of agreements, negotiations, positive and negative know-how, computer programs, computer applications, software design, web design, work in process, databases, manuals, results, developments, reports, graphics, drawings, blueprints, sketches, market studies, internal and upgrade costs, formulae, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, supplier lists, manufacturing information, machines, molds, marketing information, advertising information, and sales information..

ii.     Excluded Intellectual Property Work Product does not include intellectual property for which none of Company equipment, supplies, facilities or trade secret information was used and which was developed entirely on Employee's own time, unless the invention relates to Company business or to Company actual or demonstrably anticipated research or development activities, or

unless the invention results from work Employee performed for Company.

b. <u>Work Made for Hire.</u> Employee acknowledges that, by reason of being employed by Company, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter is work made for hire as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and such copyrights are therefore owned by Company. To the extent that the foregoing does not apply, Employee hereby irrevocably assigns to Company, for no additional consideration, Employee's entire right, title and interest in and to all Work Product and relevant intellectual property rights, including the right to sue, counterclaim and recover for all past, present and future infringement, misappropriation or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit Company rights, title or interest in any Work Product or relevant intellectual property rights so as to be less in any respect than that Company would have had in the absence of this Agreement.

c. <u>Further Assurances; Power of Attorney.</u>  During and after Employee's employment, Employee agrees to reasonably cooperate with Company, at Company's expense, to (i) apply for, obtain, perfect and transfer to Company the Work Product and relevant intellectual property rights in the Work Product in any jurisdiction in the world; and (ii) maintain, protect and enforce the same, including, without limitation, executing and delivering to Company any and all applications, oaths, declarations, affidavits, waivers, assignments and other documents and instruments as shall be requested by Company. Employee hereby irrevocably grants Company power of attorney to execute and deliver any such documents on Employee's behalf in Employee's name and to do all other lawfully permitted acts to transfer the Work Product to Company and further the transfer, issuance, prosecution and maintenance of all relevant intellectual property rights therein, to the full extent permitted by law, if Employee does not promptly cooperate with Company request (without limiting the rights Company shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be affected by Employee's subsequent incapacity.

d. <u>Moral Rights.</u> To the extent any copyrights are assigned under this Agreement, Employee hereby irrevocably waives, to the extent permitted by applicable law, any and all claims Employee may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as moral rights with respect to all Work Product and all relevant intellectual property rights.

e. <u>Identification of Authorship.</u> Company, its assignees and licensees are not required to designate Employee as the author of any Work Product when any such work is distributed publicly, nor to make any such public distribution or any use thereof.

f. <u>Pre-existing Rights.</u> **"Pre-existing Rights"** shall mean all inventions, discoveries, designs, developments, methods, modifications, improvements, ideas, products, processes, algorithms, databases, computer programs, formulae, techniques, know-how, trade secrets, graphics or images, and audio or visual works and other works of authorship, whether or not patentable or copyrightable, in which Employee has any right, title, or interest, and which were conceived or written either wholly or in part by Employee prior to Employee's employment with Company.

g. <u>Notification.</u> Within 24 hours of signing this Agreement, Employee shall notify Company regarding any and all Pre-existing Rights by mailing Company General Counsel; 327 FM 2004 Rd; Lake Jackson, TX 77566 in addition to emailing the same to _____. Unless both a letter and email are received, Employee represents

that he has no Pre-existing Rights.

3. <u>Non-Solicitation.</u> During Employee's employment and for a period of one (1) year following the termination of Employee's employment for any reason Employee will not directly or indirectly, as an individual, officer, director, shareholder, agent, employee, contractor, or consultant of any person, proprietorship, partnership, limited liability company, corporation, or any other business or company:

    a.    hire, solicit, entice, or induce any current employee of Company with whom Employee worked or supervised during the preceding two-year period for the purpose of persuading or influencing such employee to obtain employment with another business; or

    b.    aid, assist or abet any other person, company, or business, in hiring, soliciting, or enticing any current employee of Company with whom Employee worked or supervised during the preceding two-year period for the purpose of persuading or influencing such employee to obtain employment with another business.

4. <u>Former Employers.</u> Employee acknowledges that Company expects Employee to respect and safeguard the trade secrets and confidential information of any and all former employers. Employee will not disclose to Company, use in Company's business, or cause Company to use, any information or material that is confidential to any former employer, unless such information is no longer confidential or Company or Employee has obtained the written consent of such former employer to do so.

5. <u>Conflict of Interest.</u> Because Employee is working for Company, it is important to realize that Employee has an up close and personal look at Company's business every day. With this in mind, Employee shall avoid any conflict between Employee's personal interests and those of the Company. A conflict of interest occurs when Employee's personal interests interfere — or appear to interfere — with Employee's ability to make sound business decisions on behalf of Company. There are some common relationships or circumstances that can create, or give the appearance of, a conflict of interest. The situations generally involve gifts from vendors, customers or co-workers and business or financial dealings or investments with competitors, vendors, customers or co-workers. Gifts, favors, tickets, entertainment and other such inducements may be attempts to "purchase" favorable treatment. Accepting such inducements could raise doubts about Employee's ability to make independent business judgments and the Company's commitment to treating people fairly. In addition, a conflict of interest exists when employees have a financial or ownership interest in a business or financial venture that may be at variance with the interests of Company. Likewise, when Employee engages in business transactions that benefit family members, it may give an appearance of impropriety.

    a.    Employee must refrain from any activity or having any financial interest that is inconsistent with the Company's best interest and also must refrain from activities, investments or    associations that compete with the Company, interfere with Employee's judgment concerning the Company's best interests, or exploit Employee's position with the Company for personal gains.

    b.    Employee may not be employed concurrently by someone other than the Company if such employment is in competition with the Company.

    c.    Exceptions to the rule concerning outside employment would be: (i) to engage in activity protected by the National Labor Relations Act, (ii) to engage in any outside employment concerning religion or religious activities, and (iii) to engage in military service. Therefore, it is not necessary to obtain prior written consent to engage in (i),

(ii), or (iii), set forth in this sub-paragraph.

6. <u>Security and Access.</u> Employee agrees and covenants: (i) to comply with all Company security policies and procedures as in force from time to time; (ii) not to access or use any Company property or resources except as authorized by Company during Employee's employment at Company; and (iii) not to access or use any Company property or resources in any manner after the voluntary or involuntary termination of Employee's employment. Employee agrees to notify Company promptly in the event Employee learns of any violation of the foregoing by others, or of any other misappropriation or unauthorized access, use, reproduction or reverse engineering of, or tampering with any Company property or resources by others.

7. <u>Exit Obligations.</u> Upon (i) voluntary or involuntary termination of Employee's employment or (ii) Company request at any time during Employee's employment, Employee shall provide or return to Company any and all Company property, including keys, key cards, access cards, identification cards, security devices, Company credit cards, network access devices, computers, cell phones, iPads, Company vehicles, equipment, manuals, reports, files, books, compilations, work product, e-mail messages, recordings, information storage devices, and data and all Company documents and materials belonging to Company and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of Employee, whether they were provided to Employee by Company or created by Employee in connection with employment by Company. The destruction, deletion, or copying of any of the foregoing must have the written consent of an Officer of Company.

8. <u>Disputes.</u>

    a. **Remedies.** Employee acknowledges that Company Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of Company is of great competitive importance and commercial value to Company, and that improper use or disclosure of the Confidential Information will cause irreparable harm to Company, for which remedies at law will not be adequate. In the event of a breach, or threatened breach, by Employee of any of the provisions of this Agreement, Employee hereby consents and agrees that Company shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction (notwithstanding Section 8.b. of this Agreement), without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

    b. **Arbitration.** Company and Employee recognize that disputes may arise from time to time and Company and the Employee agree to arbitration as follows:

        i. **Matters Subject to Arbitration.** Employee and Company agree that, except as provided in Section 8.a., and except for the matters identified in Section 8.b.ii. and except as otherwise provided by law, all disputes relating to any aspect of Employee's employment with Company, and related to or arising from this Agreement, including the validity or interpretation of this arbitration provision, shall be submitted to and decided by binding arbitration in Pearland, Brazoria County, Texas. This includes, but is not limited to, any claims against Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge (including but not limited to retaliation, discrimination, workers' compensation retaliation, and harassment), defamation, misrepresentation, and emotional distress, as well as any disputes

pertaining to the meaning or effect of this Agreement. The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit "A." This agreement to arbitrate shall cover disputes arising both before and after the execution of this Agreement, except to the extent that any litigation has already been filed as of the date hereof.

ii. **Exclusions.** It is expressly agreed and understood that this arbitration provision shall not govern claims brought to enforce any non-competition agreement or confidentiality agreement, which may exist between the parties.

Nothing in this Agreement shall be construed to prohibit any current or former employee from filing any charge or complaint or participating in any investigation or proceeding conducted by an administrative agency, including the National Labor Relations Board, the Equal Employment Opportunity Commission, or the U.S. Department of Labor.

iii. **Notification/Timeliness of Claims.** Any claim which either party has against the other must be presented in writing by the claiming party to the other within the time provided by any applicable statutes of limitation. The request must specifically state that arbitration is being requested.

iv. **Legal Counsel/Costs.** Each party may retain legal counsel and shall pay its own attorneys' fees and expenses to the extent permitted by law, regardless of the outcome of the arbitration. All other costs pertaining to the arbitration (payments due to the Arbitrator or to the AAA (as defined in Exhibit A)) shall be paid by the Company.

v. **Survival.** This Section 8.b. of this Agreement shall survive the termination of the employment relationship unless the parties agree otherwise in a writing signed by Employee and an officer of Company.

vi. It is expressly agreed and understood that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

vii. **NOTICE TO EMPLOYEE.** BY SIGNING THIS AGREEMENT, EMPLOYEE IS AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN EMPLOYEE AND COMPANY (EXCEPT AS PROVIDED IN SECTION 8.a., AND EXCEPT THOSE SPECIFICALLY EXCLUDED IN SECTION 8.b.ii. AND THOSE OTHERWISE EXCLUDED BY APPLICABLE LAW, IF ANY) DECIDED BY BINDING ARBITRATION AND EMPLOYEE IS WAIVING HIS OR HER RIGHT TO A JURY OR COURT TRIAL.

viii. **MODIFICATIONS.** Neither Employee's at-will status nor any of the above provisions pertaining to arbitration may be modified except by a written agreement signed by both Employee and Company.

c. **JURY TRIAL WAIVER AND CLASS ACTION WAIVER.  EMPLOYEE UNDERSTANDS AND AGREES THAT BY ACCEPTING OR CONTINUING EMPLOYMENT WITH COMPANY, EMPLOYEE AND COMPANY IRREVOCABLY WAIVE THEIR RIGHT TO TRIAL BY JURY ON ANY CLAIM, DISPUTE, ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, ARISING OUT OF THE EMPLOYMENT RELATIONSHIP AND/OR THE TERMINATION OF THE**

**EMPLOYMENT RELATIONSHIP. THIS WAIVER APPLIES TO ALL CLAIMS AND CAUSES OF ACTION BASED ON FEDERAL, STATE, OR LOCAL LAW INCLUDING WITHOUT LIMITATION CONTRACT CLAIMS, TORT CLAIMS, CLAIMS OF DISCRIMINATION OR HARASSMENT, AND WRONGFUL TERMINATION CLAIMS UNDER STATE LAW, COMMON LAW, OR UNDER TEXAS LABOR CODE, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE CIVIL RIGHTS ACT OF 1991, THE AMERICANS WITH DISABILITIES ACT, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OR THE OLDER WORKERS BENEFIT PROTECTION ACT, OR ANY OF THE AFOREMENTIONED AS AMENDED. NEITHER COMPANY NOR ANY EMPLOYEE MAY PURSUE ANY CLASS ACTION, COLLECTIVE ACTION, CONSOLIDATED ACTION, ACT IN REPRESENTATIVE CAPACITY ON BEHALF OF OTHER PERSONS OR ENTITIES WHO CLAIM TO BE SIMILARLY SITUATED, OR PARTICIPATE AS A CLASS MEMBER IN ANY SUCH PROCEEDING. THIS WAIVER DOES NOT AFFECT ANY REMEDIES AVAILABLE UNDER ANY LAWS; RATHER, EMPLOYEE AND COMPANY WAIVE ONLY THE RIGHT TO TRIAL BY JURY AND THE RIGHT TO PURSUE OR PARTICIPATE IN ANY CLASS ACTION OR SIMILAR PROCEEDING AS DESCRIBED ABOVE IN THIS WAIVER. EMPLOYEE AND COMPANY WILL PRESENT ANY CONTROVERSY INVOLVING COMPANY AND EMPLOYEE IN A BENCH TRIAL TO A JUDGE. THE ONLY EXCEPTIONS TO THE REQUIREMENT OF A BENCH TRIAL TO A JUDGE SHALL BE FOR CLAIMS ARISING UNDER THE NATIONAL LABOR RELATIONS ACT, WHICH ARE BROUGHT BEFORE THE NATIONAL LABOR RELATIONS BOARD, UNEMPLOYMENT CLAIMS, OR AS MAY OTHERWISE BE REQUIRED BY STATE OR FEDERAL LAW. HOWEVER, NOTHING HEREIN SHALL PREVENT EMPLOYEE FROM FILING AND PURSUING PROCEEDINGS BEFORE THE UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND/OR ANY OTHER SIMILAR STATE AGENCY.**

**THIS WAIVER SHALL SURVIVE THE TERMINATION OF YOUR EMPLOYMENT, INCLUDING WITHIN, BUT NOT LIMITED TO, ANY RETENTION AGREEMENT OR OTHER APPLICABLE AGREEMENTS CONCERNING YOUR EMPLOYMENT UNLESS THE EMOLOYEE AND COMPANY AGREE OTHERWISE IN A WRITING SIGNED BY EMPLOYEE AND AN OFFICER OF COMPANY.**

**EMPLOYEE AND COMPANY ACKNOWLEDGE THAT A RIGHT TO A JURY IS A CONSTITUTIONAL RIGHT, THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL AND THAT THIS WAIVER HAS BEEN ENTERED INTOKNOWINGLY AND VOLUNTARILY.**

**EMPLOYEE ACKNOWLEDGES THAT THIS WAIVER IS NOT A CONTRACT OF EMPLOYMENT BETWEEN COMPANY AND EMPLOYEE FOR ANY SPECIFIC TIME PERIOD AND DOES NOT ALTER THE AT-WILL EMPLOYMENT RELATIONSHIP. THE EMPLOYMENT RELATIONSHIP BETWEEN COMPANY AND ALL EMPLOYEES IS BASED ON MUTUAL CONSENT AND CAN BE TERMINATED AT ANY TIME, EITHER BY EMPLOYEE OR COMPANY WITHOUT NOTICE.**

**EMPLOYEE UNDERSTANDS THAT HIS OR HER EMPLOYMENT OR CONTINUED EMPLOYMENT WITH COMPANY CONSTITUTES EMPLOYEE'S ACCEPTANCE OF**

<u>**THE TERMS OF THIS PROVISION AS A CONDITION OF EMPLOYMENT OR
CONTINUED EMPLOYMENT.**</u>

<u>**EMPLOYEE HAS SERIOUSLY CONSIDERED THE RAMIFICATIONS OF THIS
WAIVER AND WHETHER TO ACCEPT (OR CONTINUE) EMPLOYMENT WITH THE
COMPANY AND HAS ENTERED INTO THIS WAIVER WITHOUT ANY HESITATION
OR CONFUSION AS TO ITS EFFECT.**</u>

d.  **Each Party acknowledges and agrees that any controversy that may arise under
this Agreement is likely to involve complicated and difficult issues, and
therefore, each such Party irrevocably and unconditionally waives any right the
Party may have to a trial by jury in any legal action arising out of or relating to
this Agreement, Employee's employment with or the termination of Employee's
employment.**

e.  <u>Governing Law; Jurisdiction and Venue.</u>  Except as otherwise provided pursuant
to this Agreement, including Section 8.b., all disputes arising out of or relating to this
Agreement or relating to or arising out of Employee's employment by Company or any
disputes between Company and Employee shall be subject to the exclusive jurisdiction
and venue of the state courts sitting in Brazoria County, Texas and the federal courts in
the Southern District of Texas-Houston Division, and each party irrevocably consents to
such exclusive jurisdiction and venue and waives any objection thereto.

9.  <u>Miscellaneous.</u>

a.  <u>Headings.</u> Headings of the sections and paragraphs of this Agreement are
intended solely for convenience and no provision of this Agreement is to be construed
by reference to the heading of any section.

b.  <u>Entire Agreement.</u> Unless specifically provided herein, this Agreement contains
all the understandings and representations between Employee and Company
pertaining to the subject matter hereof and supersedes all prior and contemporaneous
understandings, agreements, representations and warranties, both written and oral,
with respect to such subject matter; provided, however, that a pre-existing or future
contractual obligation between Employee and Company entitled "Retention Agreement"
or "Employment Agreement," shall remain in full force and effect, if applicable.

c.  <u>Modification and Waiver.</u> No provision of this Agreement may be amended or
modified unless such amendment or modification is agreed to in writing and signed by
Employee and by an authorized officer of Company (other than Employee). No waiver
by either of the Parties of any breach by the other Party hereto of any condition or
provision of this Agreement to be performed by the other Party hereto shall be deemed
a waiver of any similar or dissimilar provision or condition at the same or any prior or
subsequent time, nor shall the failure of or delay by either of the Parties in exercising
any right, power or privilege hereunder operate as a waiver thereof to preclude any
other or further exercise thereof or the exercise of any other such right, power or
privilege.

d.  <u>Severability.</u> Should any provision of this Agreement be held by a court of
competent jurisdiction to be enforceable only if modified, or if any portion of this
Agreement shall be held as unenforceable and thus stricken, such holding shall not
affect the validity of the remainder of this Agreement, the balance of which shall

continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

**At-Will Employment. Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the at-will status of the employment relationship between Company and Employee, pursuant to which either Buc-ee's, Ltd. or Employee may terminate the employment relationship at any time, with or without cause, with or without notice.**

Employee Name: John Pedersen

Employer Representative's Name: Abigail Mcanally

☐  **Employee's Signature**

☐  **Employer Representative's Signature**

(checking the checkbox above is equivalent to a handwritten signature)

(checking the checkbox above is equivalent to a handwritten signature)

# EXHIBIT A

## ARBITRATION PROCEDURES

1. <u>Procedural Rules and Applicable Law.</u> Arbitration shall be administered under the rules of the American Arbitration Association (**"AAA"**) in accordance with AAA's Employment Arbitration Rules and Mediation Procedures and any requirements imposed by Texas law. In the event of any inconsistency between this Agreement and the rules or law to be applied pursuant to this paragraph, the terms of this Agreement shall apply.

2. <u>Arbitrator.</u> The arbitration shall be before a single arbitrator.

3. <u>Confidentiality.</u> The parties agree and acknowledge that any arbitration proceedings between them, and the outcome of such proceedings, shall be kept strictly confidential: provided however, that the Company may disclose such information to the extent required by law and to its employees, agents and professional advisors who have a legitimate need to know such information, and the Employee may disclose such information (1) to the extent required by law, (2) to the extent that the Employee is required to disclose same to professional persons assisting Employee in preparing tax returns, and (3) to Employee's legal counsel.

4. <u>Confirming the Award.</u> The parties agree that an action to confirm the award shall be shall be the state courts sitting in Brazoria County, Texas or the federal courts in the Southern District of Texas-Houston Division. Each party irrevocably consents to such exclusive jurisdiction and venue and waives any objection thereto.

5. <u>Class Action Waiver.</u> To the extent allowed by applicable state and federal law, the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

6. <u>Injunctive Relief.</u> Either party has the right to apply to any court of competent jurisdiction for provisional measures, including pre-arbitral attachments or injunctions, provided however that, after the arbitrators are appointed, the arbitrators shall have sole jurisdiction to consider

applications for provisional measures, and any provisional measures ordered by the arbitrators may be specifically enforced by any court of competent jurisdiction.

— End of 2023 Agreement / Beginning of 2025 Agreement —

## CONFIDENTIALITY, PROPRIETARY RIGHTS, NON-SOLICITATION, ARBITRATION, AND JURY TRIAL AND CLASS ACTION WAIVER AGREEMENT

This Confidentiality, Proprietary Rights, Non-Solicitation, Arbitration, and Jury Trial and Class Action Waiver Agreement (**"Agreement"**) is entered into by and between Buc-ee's, Ltd., acting on behalf of itself and as agent for its Affiliates[1] (Buc-ee's, Ltd. and its Affiliates collectively are referred to herein as **"Buc-ee's," "Company"** or **"Employer"**), and Employee named below (**"Employee"**), and is effective as of the date signed. Company and Employee shall be known collectively as the **"Parties"** and individually as a **"Party."**

In consideration of the mutual promises contained herein, along with Employee's future or continued employment by the Company, which Employee acknowledges to be good and valuable consideration for Employee's obligations hereunder, the Company and Employee hereby agree as follows:

1. **Confidentiality.**

   a. <u>Confidential Information.</u> Employee understands and acknowledges that during the course of employment, Employee will have access to and may become aware of trade secrets and similarly protected proprietary and confidential documents, materials, data, and other information of or relating to the Company and its business (**"Confidential Information"**).

   Confidential Information includes, but is not limited to, all information not generally known to the public in any form or medium relating directly or indirectly to: recipes, preparation techniques, marketing plans and strategies, advertising plans and strategies, financial data or records, sales and pricing information, cost of sales, margins, rebates, planned business activities, acquisitions, expansions, product development, proposals, blueprints, store designs, purchasing patterns, business processes and strategies, training methods, vendor or supplier information and contractual terms, purchasing information and contracts, personnel information, customer information or lists, relationships with other entities, and other proprietary business information. Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

   Confidential Information shall not include information that is generally available to and known by the public, provided that such disclosure to the public is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

   b. <u>Disclosure and Use Restrictions.</u> Employee covenants:

      i. to treat all Confidential Information strictly confidential;

      ii. not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated,

---

[1] "Affiliates" means the subsidiaries of Buc-ee's, Ltd. that own and operate certain Buc-ee's locations. Employee may be employed by Buc-ee's, Ltd. or by one of its Affiliates, depending on Employee's location and job. All such entities are included in the definition of "Company."

A-2025-1

or made available to any entity or person whatsoever (including other employees of the Company not having a need to know or authority to know and to use the Confidential Information in connection with their employment at the Company) and, in any event, not to anyone outside of the direct employ of the Company; and

    iii.    not to access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of the Company, except as required in the performance of the Employee's authorized employment duties to the Company or with the prior consent of an authorized officer of the Company.

c.    <u>Disciplinary Action.</u> Employee acknowledges that misuse, unauthorized access, or unauthorized disclosure of Confidential Information is cause for disciplinary action, including termination of employment.

d.    <u>PIN Information.</u> Employee must keep PIN and other similar personal identification information confidential. Employee may not share this information with any other employee.

e.    <u>Confidential Information Developed During Employment.</u> Employee understands and agrees that Confidential Information developed by Employee in the course of employment by the Company shall be subject to the terms and conditions of this Agreement as if the Company furnished the same Confidential Information to Employee in the first instance.

f.    <u>Notice under the Defend Trade Secrets Act of 2016.</u> Notwithstanding any other provision of this Agreement, as provided for by the Economic Espionage Act of 1996, as amended by the Defend Trade Secrets Act of 2016, Employee will not be held criminally or civilly liable under any federal or state trade secret law for any disclosure of Confidential Information, including any trade secret, that (a) is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney if such disclosure is made solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Further, if Employee files a lawsuit for retaliation by the Company for reporting a suspected violation of the law, Employee may disclose the Company's Confidential Information, including its trade secrets, to Employee's attorney and may use the Confidential Information in the court proceeding if Employee files any document containing the Confidential Information under seal and does not disclose it, except pursuant to court order.

g.    <u>Duration of Confidentiality Obligations.</u> Employee understands and acknowledges that Employee's obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon Employee first having access to such Confidential Information (whether before or after Employee begins employment by the Company) and shall continue during and after employment by the Company until such time as such Confidential Information has become public knowledge, other than as a result of Employee's breach of this Agreement or breach by those acting in concert with Employee or on Employee's behalf.

h.    <u>Remedies.</u> Employee acknowledges that Company Confidential Information and the Company's ability to reserve it for the exclusive knowledge and use of the Company is of great competitive importance and commercial value to the Company, and that improper use or disclosure of the Confidential Information will cause irreparable harm to

A-2025-2

the Company, for which remedies at law will not be adequate. In the event of a breach, or threatened breach, by Employee of any of the provisions of this Agreement, Employee hereby consents and agrees that the Company shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction (notwithstanding Section 11.a.i of this Agreement), without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

2. **Proprietary Rights.**

a. Work Product. Employee acknowledges and agrees that all writings, works of authorship, technology, inventions, discoveries, ideas and other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived or reduced to practice by Employee individually or jointly with others during Employee's employment by the Company and for a period of one year after termination of employment and relating in any way to the business or contemplated business, research or development of the Company (regardless of when or where prepared or whose equipment or other resources is used in preparing) and all printed, physical and electronic copies, all improvements, rights and claims related to the foregoing, and other tangible embodiments thereof, as well as any and all rights in and to copyrights, trade secrets, trademarks (and related goodwill), patents and other intellectual property rights arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefore, and continuations, divisions, continuations-in-part, reissues, extensions and renewals thereof (collectively, "**Work Product**" and as further defined below), shall be the sole and exclusive property of the Company

   i. Definition of Work Product. In addition to the definition provided by Section 2.a for purposes of this Agreement, Work Product includes, but is not limited to, plans, publications, research, strategies, techniques, processes, agreements, documents, contracts, terms of agreements, negotiations, positive and negative know-how, computer programs, computer applications, software design, web design, work in process, databases, manuals, results, developments, reports, graphics, drawings, blueprints, sketches, market studies, internal and upgrade costs, formulae, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, supplier lists, manufacturing information, machines, molds, marketing information, advertising information, and sales information.

   ii. Excluded Intellectual Property. Work Product does not include intellectual property for which none of the Company equipment, supplies, facilities or trade secret information was used and which was developed entirely on Employee's own time, unless the invention relates to the Company business or to the Company's actual or demonstrably anticipated research or development activities, or unless the invention results from work Employee performed for the Company.

b. Work Made for Hire. Employee acknowledges that, by reason of being employed by the Company, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter is work made for hire as defined in the Copyright Act of

A-2025-3

1976 (17 U.S.C. § 101), and such copyrights are therefore owned by the Company. To the extent that the foregoing does not apply, Employee hereby irrevocably assigns to the Company, for no additional consideration, Employee's entire right, title and interest in and to all Work Product and relevant intellectual property rights, including the right to sue, counterclaim and recover for all past, present and future infringement, misappropriation or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit the Company's rights, title or interest in any Work Product or relevant intellectual property rights so as to be less in any respect than that the Company would have had in the absence of this Agreement.

c.  <u>Further Assurances; Power of Attorney.</u> During and after Employee's employment, Employee agrees to reasonably cooperate with the Company, at the Company's expense, to (i) apply for, obtain, perfect and transfer to the Company the Work Product and relevant intellectual property rights in the Work Product in any jurisdiction in the world; and (ii) maintain, protect and enforce the same, including, without limitation, executing and delivering to the Company any and all applications, oaths, declarations, affidavits, waivers, assignments and other documents and instruments as shall be requested by the Company. Employee hereby irrevocably grants the Company power of attorney to execute and deliver any such documents on Employee's behalf in Employee's name and to do all other lawfully permitted acts to transfer the Work Product to the Company and further the transfer, issuance, prosecution and maintenance of all relevant intellectual property rights therein, to the full extent permitted by law, if Employee does not promptly cooperate with the Company's request (without limiting the rights the Company shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be affected by Employee's subsequent incapacity.

d.  <u>Moral Rights.</u> To the extent any copyrights are assigned under this Agreement, Employee hereby irrevocably waives, to the extent permitted by applicable law, any and all claims Employee may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as moral rights with respect to all Work Product and all relevant intellectual property rights.

e.  <u>Identification of Authorship.</u> The Company, its assignees and licensees are not required to designate Employee as the author of any Work Product when any such work is distributed publicly, nor to make any such public distribution or any use thereof.

f.  <u>No License.</u> The Employee understands that this Agreement does not, and shall not be construed to, grant the Employee any license or right of any nature with respect to any Work Product or Intellectual Property Rights or any Confidential Information, materials, software, or other tools made available to the Employee by the Company.

g.  <u>Pre-existing Rights.</u>

i.  **"Pre-existing Rights"** shall mean all inventions, discoveries, designs, developments, methods, modifications, improvements, ideas, products, processes, algorithms, databases, computer programs, formulae, techniques, know-how, trade secrets, graphics or images, and audio or visual works and other works of authorship, whether or not patentable or copyrightable, in which Employee has any right, title, or interest, and which were conceived or written either wholly or in part by Employee prior to Employee's employment with the Company.

v1

A-2025-4

      ii.    <u>Notification.</u> Within 24 hours of signing this Agreement, Employee shall notify the Company regarding any and all Pre-existing Rights by mailing Buc-ee's, Ltd. General Counsel; 327 FM 2004 Rd; Lake Jackson, TX 77566 in addition to emailing the same to <u>legal@buc-ees.com</u>. Unless both a letter and email are received, Employee represents that he has no Pre-existing Rights.

3.   **Publicity Waiver and Release.** Employee irrevocably grants to Company and Company's advertising agencies, promotion agencies, assigns, licensees, and successors the right to use Employee's image, likeness, name, appearance, biographical information, and voice, as may be or have been captured during Employee's employment with the Company (collectively, **"Image"**), including modifications, alterations, edits, and adaptations thereof, in any medium or format whatsoever now existing or hereafter created, for all lawful purposes, including advertising, promotion, educational, training, trade, or any commercial purpose throughout the world and in perpetuity. Employee waives the right to inspect or approve versions of Employee's Image used for publication or the written copy that may be used in connection with the Image. Employee irrevocably waives and releases Company and its parents, subsidiaries, Affiliates, and related entities, as well as each of their respective officers, directors, agents, employees, licensors, licensees, predecessors in interest, successors, and assigns, from any claims that may arise regarding the use of Employee's Image, including but not limited to any claims of trademark infringement, copyright, defamation, invasion of privacy, infringement of moral rights or rights of publicity, physical or emotional injury or distress, or any similar claim or cause of action in tort, contract, or any other legal theory, now or hereafter known in any jurisdiction. Company is permitted, although not obligated, to include Employee's name as a credit in connection with the Image. Employee waives any right to payment, royalties, or other compensation arising out of or related to the uses contemplated herein. Company is not obligated to utilize any of the rights granted herein. Employee further represents and warrants to Company that use of Employee's Image as contemplated herein will not violate any right (including without limitation trade secret, copyright, trademark, right to privacy, or right of publicity) of, or conflict with or violate any contract with or commitment made to, any person or entity, and that no consent or authorization from, or any payment to, any third party is required in connection herewith. Employee agrees to defend, indemnify, and hold harmless Company from and against all claims by third parties resulting from the Employee's breach or alleged breach of this Section, including any of the foregoing representations and warranties.

4.   **Non-Disparagement.** Subject to Section 6 of this Agreement, Employee agrees that (1) Employee will not make, publish, or communicate defamatory or disparaging remarks, comments, or statements concerning any of the Company's products or services, and (2) Employee will not at any time make, publish, or communicate to any person or entity or in any public forum any maliciously false, defamatory, or disparaging remarks, comments, or statements concerning the Company or its business, or any of its employees, officers, now or at any time in the future.

5.   **Non-Solicitation.** During Employee's employment and for a period of one (1) year following the termination of Employee's employment for any reason, Employee will not directly or indirectly:

     a.   solicit, recruit, hire, or employ, or attempt to solicit, recruit, hire, or employ, any current employee of the Company who holds a position uniquely essential to the management, organization, or service of the business, for the purpose of persuading or influencing such employee to obtain employment with another business who carries on a like business in a state where the Company currently operates; or

     b.   aid, assist or abet any other person, company, or business, to solicit, recruit, hire, or employee any current employee of the Company who holds a position uniquely essential to the management, organization, or service of the business, for the purpose of

A-2025-5

persuading or influencing such employee to obtain employment with another business who carries on a like business in a state where the Company currently operates.

6. **Protected Rights.** Nothing in this Agreement shall restrict or impede the Employee from exercising any rights protected or required by state or federal law, including exercising protected rights under Section 7 of the National Labor Relations Act, and disclosing Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. Employee, however, shall promptly provide written notice of any such order or subpoena to Buc-ee's, Ltd. General Counsel; 327 FM 2004 Rd; Lake Jackson, TX 77566 in addition to emailing the same to legal@buc-ees.com, within 3 business days of receiving such order, but in any event sufficiently in advance of making any disclosure to permit the Company to contest the order or seek confidentiality protections, as determined in the Company's sole discretion.

7. **Former Employers.** Employee acknowledges that the Company expects Employee to respect and safeguard the trade secrets and confidential information of any and all former employers. Employee will not disclose to the Company, use in the Company's business, or cause the Company to use, any information or material that is confidential to any former employer, unless such information is no longer confidential or the Company or Employee has obtained the written consent of such former employer to do so.

8. **Conflict of Interest**. Because Employee is working for the Company, it is important to realize that Employee has an up close and personal look at the Company's business every day. With this in mind, Employee shall avoid any conflict between Employee's personal interests and those of the Company. A conflict of interest occurs when Employee's personal interests interfere — or appear to interfere –– with Employee's ability to make sound business decisions on behalf of the Company. There are some common relationships or circumstances that can create, or give the appearance of, a conflict of interest. The situations generally involve gifts from vendors, customers or co-workers and business or financial dealings or investments with competitors, vendors, customers or co-workers. Gifts, favors, tickets, entertainment and other such inducements may be attempts to "purchase" favorable treatment. Accepting such inducements could raise doubts about Employee's ability to make independent business judgments and the Company's commitment to treating people fairly. In addition, a conflict of interest exists when employees have a financial or ownership interest in a business or financial venture that may be at variance with the interests of the Company. Likewise, when Employee engages in business transactions that benefit family members, it may give an appearance of impropriety.

   a. Employee must refrain from any activity or having any financial interest that is inconsistent with the Company's best interest and also must refrain from activities, investments or associations that compete with the Company, interfere with Employee's judgment concerning the Company's best interests, or exploit Employee's position with the Company for personal gains.

   b. Employee may not be employed concurrently by someone other than the Company if such employment is in competition with the Company.

   c. Exceptions to the rule concerning outside employment would be: (i) to engage in activity protected by the National Labor Relations Act, (ii) to engage in any outside employment concerning religion or religious activities, and (iii) to engage in military service. Therefore, it is not necessary to obtain prior written consent to engage in (i), (ii), or (iii), set forth in this sub-paragraph.

9. **Security and Access.** Employee agrees and covenants: (i) to comply with all the Company security policies and procedures as in force from time to time; (ii) not to access or use any the

A-2025-6

Company property or resources except as authorized by the Company during Employee's employment at the Company; and (iii) not to access or use any Company property or resources in any manner after the voluntary or involuntary termination of Employee's employment. Employee agrees to notify the Company promptly in the event Employee learns of any violation of the foregoing by others, or of any other misappropriation or unauthorized access, use, reproduction or reverse engineering of, or tampering with any the Company property or resources by others.

10. **Exit Obligations.** Upon (i) voluntary or involuntary termination of Employee's employment or (ii) the Company's request at any time during Employee's employment, Employee shall provide or return to the Company any and all Company property, including keys, key cards, access cards, identification cards, security devices, Company credit cards, network access devices, computers, cell phones, iPads, Company vehicles, equipment, manuals, reports, files, books, compilations, work product, e-mail messages, recordings, information storage devices, and data and all Company documents and materials belonging to the Company and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of Employee, whether they were provided to Employee by the Company or created by Employee in connection with employment by the Company. The destruction, deletion, or copying of any of the foregoing must have the written consent of an Officer of the Company.

11. **Disputes.**

   a. <u>Arbitration.</u> The Company and Employee recognize that disputes may arise from time to time, which must be resolved in a fair and efficient manner. In order to ensure equitable, efficient, and cost-effective resolution of these matters, the Company and the Employee agree to arbitration as follows:

      i. <u>Matters Subject to Arbitration.</u> Employee and the Company agree that, except as provided in Section 1.h, except for the matters identified in Section 11.a.ii, and except as otherwise provided by law, all disputes relating to any aspect of Employee's employment with the Company, and relating to or arising from this Agreement, including the validity of this arbitration provision, shall be submitted to and decided by binding arbitration in accordance with the procedures attached hereto as Exhibit "A." This includes, but is not limited to, any claims against the Company, its parents, subsidiaries, Affiliates, and related entities, as well as all of those entities' officers, directors, agents, employees, licensors, predecessors in interest, successors, and assigns for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement. This agreement to arbitrate shall cover disputes arising both before and after the execution of this Agreement, except to the extent that any litigation has already been filed as of the date hereof.

      ii. <u>Exclusions.</u> It is expressly agreed and understood that this arbitration provision and the pre-arbitration informal dispute resolution process shall not govern claims for workers' compensation or unemployment benefits; claims brought to enforce any non-solicitation or confidentiality agreement which may exist between the Parties; sexual harassment and sexual assault disputes arising under federal, state, or tribal law, unless the Employee elects to arbitrate these claims or to participate in the pre-arbitration informal dispute resolution process; and any other claims that, as a matter of law, cannot be compelled to arbitrate under applicable law.

iii.  Pre-Arbitration Informal Dispute Resolution Process. The first step in the dispute resolution process is to send a written Notice of Dispute (**"Notice"**). The Company will also send a Notice to Employee's last known physical and email address if the Company has a dispute with Employee. The Notice to the Company may be sent by U.S. mail or professional courier service to Legal Department – Notice of Dispute, Buc-ee's Ltd, 327 FM 2004, Lake Jackson, TX 77566 (the **"Notice Address"**), or, alternatively, submitted electronically by email to legal@buc-ees.com. The Notice must include: (a) the claimant's name, address, and phone number; (b) a description of the nature and basis of the claim or dispute; (c) an explanation of the specific relief sought and the basis for the calculations; and (d) specifically state that arbitration is being requested. The Notice must be personally signed by Employee (if Employee is the claimant) or by a Company representative (if the Company is the claimant).

Whoever sends the Notice must give the other Party 60 days after receipt of a complete Notice to investigate the claim. During that period, either Employee or the Company may request an individualized discussion (by phone call or video conference) regarding settlement (**"Informal Settlement Conference"**). Employee and the Company must work together in good faith to select a mutually agreeable time for the Informal Settlement Conference (which can be after the 60-day period). Employee and a Company representative must personally participate, unless otherwise agreed in writing. Employee's lawyers and the Company's lawyers (if any) also can participate.

Any applicable statute of limitations or contractual limitations period will be tolled for the claims and requested relief in the Notice during the **"Informal Resolution Period."** The Informal Resolution Period is the number of days between the date that the complete Notice is received by the other Party, and the later of (1) 60 days later or (2) the date the Informal Settlement Conference is completed, if timely requested.

Any arbitration proceeding cannot be commenced until after the Informal Resolution Period has ended. All of the pre-arbitration dispute resolution requirements are essential so that Employee and the Company have a meaningful chance to resolve disputes informally. If any aspect of these requirements has not been met, a court can enjoin the filing or prosecution of an arbitration. In addition, unless prohibited by law, New Era ADR may not accept, administer, assess, or demand fees in connection with such an arbitration. If the arbitration already is pending, it must be dismissed.

iv.  Legal Counsel/Costs. Each Party may retain legal counsel and shall pay its own attorneys' fees and expenses to the extent permitted by law, regardless of the outcome of the arbitration. All other costs pertaining to the arbitration (payments due to the Arbitrator or to the arbitration organization (as defined in Exhibit A)) shall be paid by the Company.

v.  Survival. This Section of this Agreement shall survive the termination of the employment relationship unless the Parties agree otherwise in a writing signed by Employee and an officer of the Company

vi.  It is expressly agreed and understood that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

vii. **CLASS, COLLECTIVE ACTION, AND MASS CLAIMS WAIVER.** Employee and the Company expressly intend and agree that, to the fullest extent allowable by applicable law, they hereby waive and give up their right to file or proceed as a class, collective action, or mass claim as follows:

1. Class, collective action, or mass claims procedures shall not be asserted and will not apply in any arbitration pursuant to this Agreement, except as set forth in Exhibit A.

2. Each Party will not assert a class, collective action, or mass claim against the other in arbitration, in court, or otherwise;

3. Each Party shall only submit their own individual claims in court, in arbitration, or otherwise, and will not seek to represent the interests of any other person;

4. Any claims by the Employee will not be joined, consolidated, or heard together with the claims of any other current or former employee;

5. If more than five "similar claims" for arbitration are filed, the claims shall be deemed a mass arbitration in contravention of this class, collective action, and mass claim waiver.

viii. <u>Resolution of "Similar Claims."</u> The Employee and the Company agree to the following procedures to address "similar claims" filed after the first five similar claims:

1. A "similar claim" is a claim that an arbitrator determines meets the definition of a "Mass Arbitration" under the New Era ADR Rules and Procedures (available at www.neweraadr.com) because it arises out of Common Issues of Law and Fact, as defined in the New Era Rules and Procedures, and is brought by the same law firm or group of law firms acting in coordination;

2. The first five (5) "similar claims" filed shall automatically proceed to arbitration as individual claims.

3. For all subsequent filed claims (i.e., the sixth claim and all additional claims):

    1. If the Parties agree that the claim is a "similar claim," then the claim shall be filed in a court of competent jurisdiction, subject to Section 12 of this Agreement, as an individual claim. Each Party has the right to remove any claim filed in state court if there exists federal jurisdiction.

    2. If the Parties disagree whether the claim is a "similar claim," then an arbitrator shall decide if the dispute is a "similar claim" using the procedures attached hereto as Exhibit "A." If the arbitrator determines that the claim is a "similar claim," then the claim must proceed in a court of competent jurisdiction, subject to Section 12 of this Agreement, as an individual claim and the arbitration must be dismissed. If the arbitration is dismissed as a "similar claim" under this paragraph, any applicable statute of

A-2025-9

limitations period will be tolled for the claims and requested relief from the date that the complete written Notice in Section 11.a.iii is received by the other Party until thirty days after the date of the arbitrator's order dismissing the Claim. If the arbitrator determines the claim is not a "similar claim," the claim shall proceed in arbitration as an individual claim.

4. No decision or arbitral award determining an issue in a "similar claim" shall have any preclusive effect in any arbitration between the Parties, and the arbitrator shall have no authority to give preclusive effect to the issues determined in any arbitration between the Company and any other employee.

5. The arbitrator shall have no jurisdiction or authority to (i) compel any class, collective or mass claim; (ii) consolidate different arbitration proceedings; or (iii) join any other Party to an arbitration between the Company and Employee.

ix. **NOTICE TO EMPLOYEE.** BY SIGNING THIS AGREEMENT, EMPLOYEE IS AGREEING TO HAVE ANY AND ALL DISPUTES BETWEEN EMPLOYEE AND COMPANY (EXCEPT AS PROVIDED IN SECTION 1.h AND EXCEPT AS SPECIFICALLY EXCLUDED IN SECTION 11.a.ii AND/OR AS OTHERWISE EXCLUDED BY APPLICABLE LAW, IF ANY) DECIDED BY BINDING ARBITRATION AND EMPLOYEE IS WAIVING ANY RIGHT TO A JURY OR COURT TRIAL.

x. Modifications. Neither Employee's at-will status nor any of the above provisions pertaining to arbitration may be modified except by a written agreement signed by both Employee and the Company.

b. **JURY TRIAL WAIVER AND CLASS ACTION WAIVER.**

**EMPLOYEE UNDERSTANDS AND AGREES THAT BY MAKING THE MUTUAL PROMISES CONTAINED HEREIN AND BY ACCEPTING OR CONTINUING EMPLOYMENT WITH COMPANY, EMPLOYEE AND COMPANY IRREVOCABLY, TO THE FULLEST EXTENT PERMITTED BY LAW, WAIVE THEIR RIGHT TO TRIAL BY JURY ON ANY CLAIM, DISPUTE, ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, ARISING OUT OF AND/OR RELATING TO THE EMPLOYMENT RELATIONSHIP AND/OR THE TERMINATION OF THE EMPLOYMENT RELATIONSHIP. THIS WAIVER APPLIES TO ALL CLAIMS AND CAUSES OF ACTION BASED ON FEDERAL, STATE, LOCAL, OR COMMON LAW INCLUDING WITHOUT LIMITATION CONTRACT CLAIMS; TORT CLAIMS; CLAIMS OF DISCRIMINATION, RETALIATION, OR HARASSMENT; DEFAMATION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; WRONGFUL DISCHARGE; NEGLIGENCE; TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; THE CIVIL RIGHTS ACT OF 1991; THE AMERICANS WITH DISABILITIES ACT; THE AGE DISCRIMINATION IN EMPLOYMENT ACT; THE FAMILY AND MEDICAL LEAVE ACT; THE OLDER WORKERS BENEFIT PROTECTION ACT; OR ANY OF THE AFOREMENTIONED AS AMENDED.**

**NEITHER COMPANY NOR ANY EMPLOYEE MAY PURSUE ANY CLASS ACTION, COLLECTIVE ACTION, CONSOLIDATED ACTION, ACT IN REPRESENTATIVE CAPACITY ON BEHALF OF OTHER PERSONS OR ENTITIES WHO CLAIM TO BE SIMILARLY SITUATED, OR PARTICIPATE AS A CLASS MEMBER IN ANY SUCH PROCEEDING. THIS WAIVER DOES NOT AFFECT ANY REMEDIES AVAILABLE**

v1

A-2025-10

UNDER ANY LAWS; RATHER, EMPLOYEE AND COMPANY WAIVE ONLY THE RIGHT TO TRIAL BY JURY AND THE RIGHT TO PURSUE OR PARTICIPATE IN ANY CLASS ACTION OR SIMILAR PROCEEDING AS DESCRIBED ABOVE IN THIS WAIVER. EMPLOYEE AND COMPANY WILL PRESENT ANY CONTROVERSY INVOLVING COMPANY AND EMPLOYEE THAT IS EXCLUDED FROM THE SCOPE OF THE ARBITRATION PROVISION IN A BENCH TRIAL TO A JUDGE. THE ONLY EXCEPTIONS TO THE REQUIREMENT OF A BENCH TRIAL TO A JUDGE SHALL BE FOR CLAIMS ARISING UNDER THE NATIONAL LABOR RELATIONS ACT, WHICH ARE BROUGHT BEFORE THE NATIONAL LABOR RELATIONS BOARD, UNEMPLOYMENT CLAIMS, OR AS MAY OTHERWISE BE REQUIRED BY STATE OR FEDERAL LAW. HOWEVER, NOTHING HEREIN SHALL PREVENT EMPLOYEE FROM FILING AND PURSUING PROCEEDINGS BEFORE THE UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AND/OR ANY OTHER SIMILAR STATE AGENCY.

THIS WAIVER SHALL SURVIVE THE TERMINATION OF EMPLOYEE'S EMPLOYMENT, INCLUDING WITHIN, BUT NOT LIMITED TO, ANY RETENTION AGREEMENT OR OTHER APPLICABLE AGREEMENTS CONCERNING EMPLOYEE'S EMPLOYMENT UNLESS THE EMPLOYEE AND COMPANY AGREE OTHERWISE IN A WRITING SIGNED BY EMPLOYEE AND AN OFFICER OF COMPANY.

EMPLOYEE AND COMPANY ACKNOWLEDGE THAT A RIGHT TO A JURY IS A CONSTITUTIONAL RIGHT, THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL AND THAT THIS WAIVER HAS BEEN ENTERED INTO KNOWINGLY AND VOLUNTARILY.

EMPLOYEE ACKNOWLEDGES THAT THIS WAIVER IS NOT A CONTRACT OF EMPLOYMENT BETWEEN COMPANY AND EMPLOYEE FOR ANY SPECIFIC TIME PERIOD AND DOES NOT ALTER THE AT-WILL EMPLOYMENT RELATIONSHIP. THE EMPLOYMENT RELATIONSHIP BETWEEN COMPANY AND ALL EMPLOYEES IS BASED ON MUTUAL CONSENT AND CAN BE TERMINATED AT ANY TIME, EITHER BY EMPLOYEE OR COMPANY WITHOUT NOTICE.

EMPLOYEE HAS SERIOUSLY CONSIDERED THE RAMIFICATIONS OF THIS WAIVER AND WHETHER TO ACCEPT (OR CONTINUE) EMPLOYMENT WITH THE COMPANY AND HAS ENTERED INTO THIS WAIVER WITHOUT ANY HESITATION OR CONFUSION AS TO ITS EFFECT.

12. **Governing Law; Jurisdiction and Venue.**  Except as otherwise provided pursuant to this Agreement (including Section 11.a.i), all disputes arising out of or relating to this Agreement or relating to or arising out of Employee's employment by the Company or any disputes between the Company and Employee shall be subject to the exclusive law, jurisdiction, and venue of the state courts sitting in Brazoria County, Texas and the federal courts in the Southern District of Texas-Houston Division, and each Party irrevocably consents to such exclusive jurisdiction and venue and waives any objection thereto.  If any portion of this Section 12 shall be held unenforceable, the exclusive law, jurisdiction, and venue, except as otherwise provided pursuant to this Agreement (including Section 11.a.i), shall be the Employee's last place of employment at Company, and each Party irrevocably consents to such exclusive jurisdiction and venue and waives any objection thereto.

A-2025-11

## 13. Miscellaneous.

a. <u>Headings.</u> Headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the heading of any section.

b. <u>Entire Agreement.</u> Unless specifically provided herein, this Agreement contains all the understandings and representations between Employee and the Company pertaining to the subject matter hereof and supersedes all prior and/or contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter; provided, however, that a pre-existing or future contractual obligation between Employee and the Company titled "Retention Agreement" or "Incentive Agreement," shall remain in full force and effect, if applicable.

c. <u>Modification and Waiver.</u> No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by Employee and by an authorized officer of the Company (other than Employee). No waiver by either of the Parties of any breach by the other Party hereto of any condition or provision of this Agreement to be performed by the other Party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

d. <u>Severability.</u> Should any provision of this Agreement be held by an arbitrator or court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

e. <u>Successors and Assigns.</u>

    i. <u>Assignment by the Company.</u> Company may assign this Agreement to any subsidiary or Affiliate, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of the Company. This Agreement shall inure to the benefit of the Company and permitted successors and assigns.

    ii. <u>No Assignment by the Employee.</u> The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

**<u>Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the at-will status of the employment relationship between the Company and Employee, pursuant to which either the Company or Employee may terminate the employment relationship at any time, with or without cause, with or without notice.</u>**

The Parties understand and agree that electronic signatures shall have the same force and effect as handwritten signatures. The Parties further agree that they are bound by the terms of this Agreement.

A-2025-12

| Employee: | Buc-ee's: |
|---|---|
| _(signature)_ | By: _(signature)_ |
| | Joe O'Leary (on behalf of Buc-ee's, Ltd and all of its Affiliates) |

A-2025-13

**EXHIBIT A**

**ARBITRATION PROCEDURES**

1.  <u>Procedural Rules and Applicable Law.</u> Arbitration shall be administered as a Virtual Expedited Arbitration under the New Era ADR Rules and Procedures, https://www.neweraadr.com/rules-and-procedures/.

2.  <u>Initiating an Arbitration.</u> A Party shall initiate an arbitration through New Era ADR at app.neweraadr.com. The contact information for the Company shall be legal@buc-ees.com and for the employee it shall be the last known email address. For more information on initiating disputes please go to New Era ADR's Virtual Arbitration Help Center. For support when initiating a dispute please contact support@neweraadr.com.

3.  <u>Arbitrator.</u> The arbitration shall be before a single arbitrator. The Arbitrator shall issue a written opinion stating the essential findings and conclusions on which the Arbitrator's award is based.

4.  <u>Delegation.</u> The arbitrator, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, formation, enforceability, conscionability, or validity of this arbitration provision, including but not limited to the arbitrability of any dispute between the Parties, including disputes relating to the enforceability or scope of the class, collective action, and mass claim waiver.

5.  <u>"Similar Claims."</u> The arbitrator shall decide if a claim is a "similar claim" and subject to arbitration. The arbitrator shall use New Era ADR's Mass Arbitration Rules and Procedures to determine if claims are "similar claims."

6.  <u>Confidentiality.</u> The Parties agree and acknowledge that any arbitration proceedings between them, and the outcome of such proceedings, shall be kept strictly confidential; provided however, that the Company may disclose such information to the extent required by law and to its employees, agents and professional advisors who have a legitimate need to know such information, and the Employee may disclose such information to the extent required by law, to the extent that the Employee is required to disclose same to professional persons assisting Employee in preparing tax returns, and to Employee's legal counsel.

7.  <u>Right to Compel Arbitration.</u> If either Party files a demand for arbitration or lawsuit containing arbitrable claims, the other Party reserves the right to compel arbitration and seek a stay of proceedings regarding any non-arbitrable claims.

8.  <u>Confirming the Award.</u> The Parties agree that an action to confirm the award shall be subject to Section 12 of the Agreement.

9.  <u>Class Action Waiver.</u> To the extent allowed by applicable state and federal law, the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

10. <u>Injunctive Relief.</u> Either Party has the right to apply to any court of competent jurisdiction for provisional measures, including pre-arbitral attachments or injunctions, provided however that, after the arbitrators are appointed, the arbitrators shall have sole jurisdiction to consider applications for provisional measures, and any provisional measures ordered by the arbitrators may be specifically enforced by any court of competent jurisdiction.

A-2025-14

11. <u>Punitive Damages</u>. The Arbitrator shall have no power to award punitive damages to either Party, except where an applicable statute allows for punitive damages.

12. <u>Alternative Arbitration Procedure</u>. In the event that New Era no longer exists as a dispute resolution entity or New Era's rules applicable to this dispute, have been held by a Court in a case brought under, relating to, or arising out of this Agreement to be unconscionable, then the arbitration shall be conducted pursuant to the CPR Administered Employment Arbitration Rules at https://drs.cpradr.org/ and any other rule or procedures determined by an arbitrator appointed by CPR under its rules to enforce and accomplish the dispute resolution procedure in this Agreement.

A-2025-15

# Exhibit B

## Notification of Pre-Existing Rights

- Submitted by Plaintiff on February 25, 2025
- Discloses intellectual property developed off the clock
- Sent via email and postal mail to Buc-ee's legal department

Notification of Pre-existing Rights

I, John K. Pedersen, citizen of the United States of America and the State of Alabama, currently residing at 1080 Montevallo Road, #220, Leeds, Alabama, 35094, herewith issue notification of my Pre-existing Rights to Buc-ee's Ltd. prior to my employment with the Company under the "New Hire Contract", to wit, the "CONFIDENTIALITY, PROPRIETARY RIGHTS, NON-SOLICITATION, ARBITRATION, AND JURY TRIAL AND CLASS ACTION WAIVER AGREEMENT", issued by the Company, with signature required by February 26, 2025.

<u>Summary</u>

In sum, my Pre-existing Rights pertain to written observations, recorded during my personal time when not clocked in during work hours, to the development/ conceptual design of computer software, worked on during my personal, discretionary time off the clock and at my home, to unpublished draft materials, including diagram illustrations, musical compositions, charts, and graphs, to an unpublished book draft, and to conceptual and computer assisted designs and working models, including 3-D printed models of working machines, all of which appertain to Buc-ee's Ltd., which I have developed off the clock and on my own time and without any aid or use of company property. For example, I purchased nut cones and pretzel tops, etc., whereupon they became my property, and these were used in developing the machine(s) referred to above.

<u>Enumerated Items</u>

1. Written Observations. During my initial interview for hire at store 0043, I informed Matthew Juricich I was writing a book about value perception, marketing, and service delivery and was inspired by the Buc-ee's business model. I also mentioned Publix in this regard. At the time of my hiring, I did not know where things would lead. From June 14, 2023 to the present, I have recorded observations from my perspective as a deli employee at S0043 and my written observations have helped to inform everything I have done pertinent to Beavers Are People Too™. I regard these observations as my proprietary intellectual property, whether these written observations were specifically used in it's development or not. These observations exist in the form of both handwritten notes and computer documents. I would be happy to discuss or make available any of the written observations I have made as my authored work, and work product, and this applies to all the subsequent enumerated items below.

2. Development/ Design of Computer Software. I have developed and designed an HR software product concept compatible with Workday or usable as a standalone HR tool I call BPT™, with the "BPT" acrostic for "Beavers Are People Too™. The conceptual architecture/design for this software is something I call "Open Source/Closed Loop™, and it is integral to the Beavers Are People Too™ Workforce Optimization Strategy. I have worked on this concept since shortly after

B-1

I was hired to the present. As a product I have conceived to help Buc-ee's Ltd., I have considered Beavers Are People Too™ to be my intellectual property.

3. All Drafts, designs, charts, graphs, musical compositions and or promotional materials related to Beavers Are People Too™ Workforce Optimization Strategy. Beavers Are People Too™ is a comprehensive strategy designed to address the challenges posed by employee attrition and turnover, incorporating best practices informed by the use/application of predictive analytics, Industrial Psychology and common sense. Beavers Are People Too™ is aimed at the following:

a. Protecting and promoting the Buc-ee's Ltd brand across the spectrum, recognizing value perception and service extend to the employee experience and developing Buc-ee's as an employer of choice esteemed by both employees and former employees.

b. Implementation of training modules and technology (including automation) designed to increase effective leadership and management, communication, product quality and consistency, efficiency in service delivery, and long term profitability, and reduce excess time spent in ways hindering this effectiveness.

c. Fostering a collaborative, people-centric work culture which brings out the best qualities in managers and employees, encouraging both managers and employees to thrive and grow and be personally invested in the overall success of the Company and of one another, where people are empowered to do their very best in their respective roles, where kindness, helpfulness, and affirmation are the rule and not the exception to the rule.

d. Reducing operating costs and proportionately increasing effectiveness and profitability through lower attrition and turnover, use of AI driven software which reduces redundant, time intensive tasks like shift deployments and work scheduling, freeing managers to better manage, and replacing manual prep functions like rolling nuts, nut trios, pretzel and granola tops, and almond cups with machine automation.

4. I have conceptually developed, with assistance from a partner, machines capable of the following functions:

a. Producing nut cones (Pecans, Almonds, and Cashews).
b. Producing nut trios.
c. Producing pretzel tops, granola tops, and almond cups.

These machines are right now in the process of development which includes, or will include, physical drawings, drafting and CAD design, use/ function testing in computer simulation, and production of 3D printed models. These machines are designed specifically for the uses listed for

Buc-ee's Ltd.

These machines presently exist as my proprietary intellectual/conceptual and in some cases physical property.

Automation of these prep functions (a-c) above can save one deli  hundreds of hours of labor each week, and their deployment over the Company footprint can and potentially will amount to considerable savings in labor costs by comparison with present expenditures, along with proportionate increase in product consistency, quality, and appearance.

5. I have written a book draft. As far as I know, the book does not reveal any trade secrets or any anecdotal information not observable by any customer entering a Buc-ee's store. The book does not "bash" Buc-ee's Ltd. in any way. The book is written from the perspective of someone who is both a customer and an employee of Buc-ee's, and is written as my own prediction of Buc-ee's next step as Buc-ee's Ltd continues its expansion. As may be gathered from what is written above, the book presents attrition and turnover as a challenge Buc-ee's will meet through implementation of workforce optimization along the lines of Beavers Are People Too™ or something similar, and, though not published at this time, exists in draft form as my proprietary intellectual property I notify as a Pre-existing Right.

The information from employees and former employees reviews cited in the book comes from public job platforms like Indeed, Glassdoor or Google.

I am still editing, adding, correcting, and deleting sections of the book and would not make it available until I am confident I have those edits substantially behind me. Nevertheless, it does exist.

Conclusion

This notification of Pre-existing rights is intended as a reply to the Agreement, "Proprietary Rights", point "g", sections "i" and "ii", and is written under a time constraint which does not allow me personally to give the Agreement my fullest possible consideration, including seeking and obtaining clarification. I state the foregoing not as a protest but a statement of fact applying to myself, to inform any and all concerned.

This notification is also submitted in view of the fact that when I began my employment with Buc-ee's Ltd., I wanted to make myself valuable and potentially helpful to the Company in ways beyond the daily performance of my assigned tasks. I apologize in advance for the way it is written and for any way it might show a smart ass, preachy, or ostentatious tone, as I am fully capable of coming across in all of these ways. I would be grateful for the opportunity to talk with

someone about my ideas, regardless of whether I do so under a non disclosure agreement, and if Buc-ee's Ltd. does not want to discuss any of the things I have written above and/or does not see any potential value in doing so with me, OK.

Regardless, I most certainly do want to continue working as a line employee in the deli for now and do not want to endanger my ongoing employment. I am grateful for having been granted the opportunity to work at Buc-ee's and at the present I would be grateful to continue to do so. Although I am limited due to my age, I have tried, as best I can, to have my work characterized by loyalty, diligence, supererogation, and a positive and friendly attitude which embodies the qualities I believe some of my ideas above encourage.

Respectfully Submitted,

John K Pedersen 2/25/25

I'm a Buc-ee's Beaver,
Work is what I do,
I laugh, and sing, and have some fun,
While I make food for you.

I'm a Buc-ee's Beaver
I'm happy all the day,
I want to make you happy too
And I hope you will stay.

Soli Deo Gloria.

# Exhibit C

## March 24, 2025 Destruction Demand

- Issued by Assistant General Counsel Trent Menning
- Orders destruction of Plaintiff's disclosed intellectual property
- Cites 2023 and 2025 Employment Agreements as authority

March 24, 2025

VIA FEDEX

John K. Pedersen
1080 Montevallo Road, #220
Leeds, Alabama 35094

Re: Notification of Pre-Existing Rights Letter

Dear Mr. Pedersen

I write in response to your letter titled "Notification of Pre-existing Rights" dated February 25, 2025 (the "Letter"). As an initial matter, we note that "Pre-existing Rights" are, by definition, those that predated your employment with the company. *See* Confidentiality, Proprietary Rights, Non-Solicitation, and Jury Trial and Class Action Waiver Agreement signed June 14, 2023 (the "2023 Agreement"), Sec. 2.f.; Confidentiality, Proprietary Rights, Non-Solicitation, Arbitration, and Jury Trial and Class Action Waiver Agreement signed February 24, 2025 (the "2025 Agreement"), 2.. Your employment with the company began June 14, 2023, and therefore any Pre-existing Rights would have to have been prior to that date, and not simply something that may have preceded your signing of the 2025 Agreement. Indeed, pursuant to the 2023 Agreement you signed in connection with beginning your employment on June 14, 2023, you were required to provide written notification of any Pre-existing Rights within 24 hours of signing that agreement. *See* 2023 Agreement, Sec,. 2 f.-g. You provided no such notification at that time, and therefore represented that you had no Pre-existing Rights. *See id.*

Regarding the alleged rights you mentioned in the Letter, as you acknowledge, all of them pertain to Buc-ee's business. *See, e.g.,* Letter at Pg. 1 ("...all of which appertain to Buc-ee's Ltd....") Despite your assertions at various points in the Letter that you regard the enumerated items as your proprietary intellectual/conceptual/ physical property, all of those things belong to Buc-ee's, because they relate to Buc-ee's business. *See* 2023 Agreement, Sec. 2; 2025 Agreement, Sec. 2. Nevertheless, Buc-ee's does not desire to receive from you any of the enumerated items mentioned in the Letter, and instead hereby instructs you to destroy any and all such items, and not make use of any purported trademarks in any way connected to Buc-ee's (*e.g.,* "Beavers Are People Too").

Please confirm in response to this letter when the destruction is complete. In the meantime, Buc-ee's reserves all rights.

Sincerely

/s/ Trent Menning

Trent Menning

# Exhibit D

### February 24, 2025 Email Requesting Clarification

- Sent by Plaintiff to Buc-ee's legal department
- Requested explanation of 'Pre-existing Rights' clause in 2025 Agreement
- No response was received

To Whom It May Concern,

I am writing to request further clarification of "Pre-existing Rights" as defined in 2.g., paragraph I, of the Waiver Agreement.

In that section, it defines them but does not expressly say how the Company will continue to regard them after the Agreement is signed. In other words, it allows employees to declare any Pre-existing Rights and indicates non-disclosure of them by the employee will amount to his assertion he has no rights, but does not indicate if the Company will continue to regard them as such under the new Agreement.

In 2.a., the following expression is used: "...regardless of when or where prepared...". Would not the expression, "regardless of when..." apply to work product prior to the agreement, so that even if the employee asserts proprietary existing rights, this assertion, while it can be made from the employee's point of view as work he did according to the various designations before he signed the agreement, is moot so far as the Company is concerned in view of the fact that the envisioned work product described in the Agreement is atemporal and covers all work, past, present, and future?

To put it another way, will Buc-ee's, under this new signed agreement, regard an employee who issues notification according to paragraph 2.g.i. as continuing to have proprietary rights, as being "grandfathered in"?

Respectfully,

John Pedersen

**Exhibit E**
**Plaintiff's Response to Buc-ee's Destruction Demand**

- Sent by Plaintiff in reply to Trent Menning's March 24, 2025 letter

- Requests clarification of both the 2023 and 2025 Agreements

- Cites lack of informed consent and response history

- Affirms Plaintiff's good faith and request for documents before complying

Dear Mr. Menning,

I have received your letter.

In your letter, you write,

"*See* Confidentiality, Proprietary Rights, Non-Solicitation, and Jury Trial and Class Action Waiver Agreement signed June 14, 2023 (the "2023 Agreement"), Sec. 2.f…".

At this time I am unable to see this agreement. Could you please provide me with a file copy or otherwise instruct me as to how I may obtain a copy so I can see it and review it as you say above?

Also, I have already indicated in my previous letter the circumstances under which I was required to sign the 2025 agreement, and I must add to those circumstances the fact that, when I did perform the esign, the online copy I signed immediately disappeared from Workday (so far as I am able to see) and therefore I am unable to review that agreement as well.

Since I began my employment at Buc-ee's, I have acted in good faith. I have not, from the very beginning of my employment, kept any of those things I represented as "pre-existing rights" a secret, but openly spoken of them. This includes a signed letter requesting instruction as to how I might obtain a NDA, which now, in reading your letter, I see you represent was itself a violation of my terms of employment. The aforementioned letter was written in good faith and I received no reply to it. It was written/ delivered last year.

More recently, in the process of reading the 2025 agreement I was required to sign, I specifically asked your office a question about preexisting rights which went unanswered. I proceeded to sign and to send the document which is the subject of your letter, because I was told if I did not do so my employment would be terminated, and not because I had fully informed consent (The time frame imposed upon me to sign the 2025 agreement completely precluded the possibility I could seek any advice from an independent source, and my good faith inquiry to your office was not answered).

I have, as I have just indicated, acted in good faith.

I regard Buc-ee's as a great company with managers who are committed to excellence and who are models of good character, diligence, and integrity. I have maintained a positive attitude and have sought to be respectful and deferential in any circumstance where I have been instructed or directed in my task(s). I have shown up for work on time and tried to do my best, knowing what I do is ultimately "unto the Lord, and not to men".

And this, this letter from you Mr. Menning, is the very first personal, official communication I receive from Buc-ee's concerning my employment since I began in June of 2023.

You take the occasion of my trying to be honest and do as I am required and appropriately disclose/ declare what I thought I had, to inform me I am in possession of your property and what I have worked on for over a year off the clock and without using any equipment, space, or products belonging to Buc-ee's and in the privacy of my own home must be physically destroyed by me acting as your legal proxy-or else.

Therefore, I need to take care in my reply/response to your communication and your directive with fully informed consent. Hence my request to be able to view and review the documents you tell me to "see".

Your office did not reply to my last similar request for clarification as to the meaning of the words of the Agreement (the 2025 Agreement). I hope, in view of the fact you are now directing me to destroy physical property, informing you when such destruction is complete, that you will do so now.

After I have been able to review the documents I have signed you reference in your letter, I will reply to your letter.

Thank you and all the best. Here's hoping that if I do have further communication with you and/ or your office we can strike a friendly and respectful tone and I will be able to enjoy consideration shown a guy who has tried as best I can to do the job I am hired to do, and not be treated like an enemy or a scam artist who is trying to take advantage of Buc-ee's.

Let's be friends as we sort this out.

Sincerely,

John Pedersen

**Exhibit F**
**Defendant's April 2, 2025 Reply to Plaintiff's Response**

- Buc-ee's reattaches 2023 and 2025 Agreements

- Requests confirmation of destruction compliance

- Offers no further clarification or legal response

Mr. Pedersen,

Thanks for your response. The 2023 and 2025 agreements are attached, as requested.

Please let me know when we can expect to hear from you regarding your compliance with the instructions in my 3/21/2025 letter.

Thanks,
Trent

Exhibit G

Plaintiff's April 2, 2025 Reply Asserting Need for Informed Consent

- Affirms need to review Agreements with legal counsel before compliance
- Responds to Defendant's reiteration of destruction demand
- Maintains Plaintiff's position that destruction under current conditions is improper

Dear Mr. Menning,

You can expect to hear from me when I have thoroughly reviewed what I have signed (2023 and 2025 agreements) with legal counsel so I can proceed with basic due process and informed consent in consideration of your demand I destroy valuable physical property or be terminated as an employee.

Since this destruction involves action(s) I must perform on your behalf without compensation and potentially has far reaching effects and consequences, I must be able to comply with your demand confident that doing so does not involve me in illegal and unconscionable activity, say nothing of unconstitutional activity under law.

I can assure you of this, Trent. You will hear from me as soon as possible.

Thank you for sending the files,

John

Exhibit H

April 3, 2025 – Plaintiff's Good Faith Attempt to Resolve Dispute

- Requests off-the-record phone conversation with Defendant's counsel
- Seeks informal resolution to avoid escalation
- Expresses desire for personal communication and mutual respect

Dear Trent,

A thought just occurred to me about my reply to your letter. Before I send you a formal response, I'm wondering if we can possibly have an informal phone conversation where I can express how I am presently seeing things and ask you about what I may not be seeing as I've had the chance to take a look at the Agreement(s). Off the record.

I'm not appealing to any process in the Agreement, just appreciating how this can escalate in the absence of personal communication, because I don't want to be adversarial and this is a really big deal for me personally.

Regards,

John

Exhibit I

April 10, 2025 – Plaintiff's Inquiry Regarding Compensation for Destruction

- Seeks clarification on whether Plaintiff would be compensated for labor
- Requests Defendant's position on monetary value of ordered destruction
- Clarifies distinction between labor and value of items to be destroyed

Dear Trent,

Before I proceed to respond to your letter of March 24, and as I continue to seek informed consent and independent legal counsel, I request clarification of your instruction to "destroy any and all such items…". This clarification is essential to my response.

It has been my understanding you have issued this instruction with the assumption I will not receive any monetary compensation for the time and effort required to undertake and complete this destruction. Is this correct? Or is it your intention to provide me with monetary compensation for carrying out your instruction?

Further, it has been, based on the wording of the Agreement you cite in your letter which I signed, that you do, in fact, regard any inherent monetary value which could be assigned to "any and all such items", because "any and all such items" are asserted by you to be your actual property, to be your sole possession, and therefore you are not and will not further offer to me any monetary compensation in consideration of the monetary value of the items you instruct me to destroy. Is this correct? Or is it your intention to reimburse the value of the items you are instructing me to destroy?

Thank you in advance for taking the time to provide me with clarification pursuant to my response to your letter.


Sincerely,

John

I-1

Exhibit J

April 10, 2025 – Defendant's Reply on Compensation

- States Plaintiff will be paid hourly wage for destruction labor
- Refuses to compensate Plaintiff for value of materials to be destroyed
- Reiterates Defendant's ownership claim over disclosed items

Mr. Pedersen,

Buc-ee's will pay you your standard hourly employee pay for a reasonable time required to destroy the items. The details around that can be worked out. However, as Buc-ee's owns the items and did not ask you to create them in the first place, it does not intend to pay you for the value, if any, of those items.

Thanks,
Trent

Exhibit K

### April 10, 2025 – Plaintiff's Inquiry Regarding Non-Employee Destruction

- Plaintiff asks whether he would be compensated for destruction labor post-employment
- Clarifies scope of obligations under changed employment status
- Requests Defendant's position on destruction if Plaintiff is no longer an employee

Thank you for your reply. One more related question:

If I am, in the future, no longer an employee of Buc-ee's and have these items, you would still compensate me for destroying them just as though I were an employee, essentially making me one for the time it takes. is that correct?

Regards, John

K-1

Exhibit L

April 10, 2025 – Defendant's Refusal to Address Hypotheticals

- Buc-ee's declines to answer Plaintiff's non-employee compensation inquiry
- Response asserts it is unnecessary to consider future hypotheticals

Mr. Pedersen,

I don't think it is necessary to explore hypotheticals at this time.

Thanks,
Trent

Exhibit M

May 9, 2025 – Final Good Faith Communication from Plaintiff

- Summarizes constructive discharge and change in employment status
- Explains delay in response due to loss of employment and upheaval
- Restates Plaintiff's good faith and effort to resolve matter without litigation

Dear Trent,

This letter is to apprise you concerning the status of my reply and to state my ongoing good faith.

I still am unable to respond, but have made some progress in understanding what I need to understand in order to do so.

I am aware that the delay in my reply can be construed as a failure to act with reasonable diligence, so I provide the following by way of explanation:

By this past April 18, I was still unable to speak with independent legal counsel, and had not, as I presently have not, made a conclusion as to how to answer your instruction.

Nevertheless on April 18, certain things transpired involving local management here which caused me to have to give two weeks' notice of my intention to end employment as of May 2. Essentially, I was forced to resign as an employee due to my perception I was being treated in a prejudicial manner which portended termination (related to this issue) so I decided to leave before such a possible eventuality occurred.

Demonstrable proof either confirming or dismissing my perception could be obtained, as far as I know. Still, I'm skeptical about the fruitfulness of appealing to (possible) liars to investigate as to whether they have told the truth, especially since "non management" employees, line employees, are regularly dismissed for far less. Note, I use the word, "possible". I make no allegation.

Whether my perception was or is justified is not the point of this letter. I am informing you I had this perception, it caused me to give notice, and the result for me is that I have been constrained to reengage in different work.

I realize this changes nothing about Buc-ee's' claim or your instruction to me.

What it does change is my ability to respond as quickly as I had heretofore thought. The upheaval in my work circumstances has added a huge factor.

I will say this much. I have found your apparent unwillingness to take a friendly approach with me and discuss the whole thing personally and off the record very discouraging.

Sincerely

John

M-1