# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**John K. Pedersen,**
*Plaintiff,*

v.

**Buc-ee's Ltd.,**
*Defendant.*

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S COMPLAINT
*For Declaratory, Injunctive, and Monetary Relief*

**Filed by:**
**John K. Pedersen**
Pro Se Plaintiff
1080 Montevallo Road, #220
Leeds, Alabama 35094
pjump56@gmail.com
717-891-0607

**Date of Filing:** _____

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S COMPLAINT

*For Declaratory, Injunctive, and Monetary Relief*

---

## I. INTRODUCTION

This Memorandum of Law is submitted in support of Plaintiff's Complaint for declaratory, injunctive, and monetary relief against Buc-ee's Ltd., arising from an employment agreement that is not a lawful contract in any meaningful sense, but a coercive instrument of intellectual confiscation, compelled silence, and post-employment servitude.

The 2023 and 2025 Agreements imposed by Defendant assert unilateral, perpetual control over Plaintiff's speech, authorship, creative work, legal identity, and even thoughts reduced to paper. They do not reflect mutual assent, informed consent, or fair exchange. They were presented on a take-it-or-terminate basis, embedded with legal fictions, and enforced selectively and unilaterally-culminating in a March 24, 2025 demand that Plaintiff erase intellectual property developed independently, off the clock, and disclosed in good faith.

These agreements purport to reach beyond the duration of employment and beyond the legal limits of the contract itself. They demand lifelong obligations, transfer of authorship without compensation, and permanent silence, including over truthful speech. They retroactively assign ownership over ideas not yet expressed and waive rights not yet asserted. In both form and substance, they are unconscionable, constitutionally defective, and unenforceable under Alabama and federal law.

This Memorandum addresses the central legal issues arising from Buc-ee's use of these agreements to assert ownership and control over Plaintiff's work, voice, and intellectual property. It argues that:

- The Agreement violates the **Thirteenth Amendment** by compelling labor and legal subordination without compensation or revocability;

- The Agreement violates the **First Amendment** by silencing lawful speech and appropriating personal identity;

- The Agreement violates the **Fifth Amendment** by denying due process and misrepresenting the conditions under which it was signed;

- And the Agreement violates **Alabama contract law** by means of fraud in the inducement, unconscionability, and breach of its own dispute resolution terms.

For these reasons, Plaintiff respectfully seeks judicial relief including: a declaration of unenforceability or alternatively an injunction against further enforcement, recognition of authorship and intellectual ownership, and monetary redress for the constitutional and reputational harm inflicted by Defendant's conduct.

## II. STATEMENT OF FACTS

Plaintiff John K. Pedersen began working at Buc-ee's Store #0043 in Leeds, Alabama on June 14, 2023. As a mandatory condition of employment, he was required to sign a dense, pre-drafted "Confidentiality, Proprietary Rights, Non-Solicitation, and Jury Trial and Class Action Waiver Agreement" (the "2023 Agreement") without legal counsel, negotiation, or meaningful opportunity for review. Plaintiff was not allowed to retain a copy of the signed agreement, which immediately disappeared from view upon signature.

On February 24, 2025, Plaintiff was issued a revised and substantially expanded version of the agreement (the "2025 Agreement") and instructed to sign within 72 hours or face immediate termination. The updated agreement contained provisions requiring irrevocable assignment of intellectual property, waiver of legal claims, perpetual use of Plaintiff's name and likeness, and a post-employment gag clause. The final page included a false declaration that Plaintiff had reviewed the document with independent legal counsel and signed voluntarily.

In good faith and within the required 24-hour window, Plaintiff submitted a formal "Notification of Pre-Existing Rights" on February 25, 2025, disclosing off-the-clock intellectual property he had developed independently over the prior year, including:

- A workforce optimization strategy titled *Beavers Are People Too*™

- A companion HR software concept (BPT™)

- A proprietary training and retention strategy

- Automation machine designs for in-store use

- A manuscript documenting the real-world business issues the strategy aimed to address

Rather than initiating a formal review or dispute resolution process as required under Section 11 of the 2025 Agreement, Buc-ee's responded with a March 24, 2025 letter from Assistant General Counsel Trent Menning. The letter ordered Plaintiff to destroy the disclosed intellectual property and trademarks without explanation, without offer of compensation, and without invocation of any arbitration procedure, settlement process, or hearing.

Over the following two weeks, Plaintiff sent a series of written inquiries to Buc-ee's legal department requesting:

- Clarification of the destruction order and its legal basis

- Copies of the signed agreements

- An explanation of ongoing post-employment obligations

- Clarification of whether compliance would be compensated

- And a phone call to informally resolve the matter

Buc-ee's replied only by reissuing the Agreements and reiterating the destruction demand. It declined to provide substantive answers to any legal, procedural, or ethical concerns raised. On April 18, 2025, under increasing legal pressure and with no clarification provided, Plaintiff gave notice of resignation. His final day was May 2, 2025.

On May 9, 2025, Plaintiff submitted one final good faith communication seeking clarification and closure. Buc-ee's did not respond.

---

## III. LEGAL ARGUMENT

### A. The Agreement Violates the Thirteenth Amendment by Imposing Conditions of Involuntary Servitude

The Thirteenth Amendment prohibits all forms of involuntary servitude, whether physical or intellectual, whether imposed by statute or by private contract. It forbids any arrangement that uses coercion- legal, economic, or reputational- to extract labor, services, or compliance without the ability to freely refuse.

As the Supreme Court held in *United States v. Kozminski*, 487 U.S. 931, 943 (1988):

> "The essence of involuntary servitude is not simply legal coercion, but the use or threat of legal sanction to compel labor or services."

The 2025 Agreement violates this standard in multiple respects:

- It compels post-employment labor and cooperation under threat of legal action (Section 2.c),

- It imposes an irrevocable duty to assign all intellectual output, even if created off the clock, post-employment, and unrelated to the job (Sections 2.a–b),

- It denies compensation for such surrender,

- And it purports to bind Plaintiff to permanent post-employment legal subordination.

Such conditions are not merely unfair; they are constitutionally impermissible. As the Court held in *Bailey v. Alabama*, 219 U.S. 219, 244 (1911):

> "The fact that the compulsion is effected through the medium of a contract does not change the character of the condition."

Buc-ee's has asserted legal dominion over Plaintiff's personhood- intellectual, legal, and expressive- and has done so not during employment, but after it has ended. That is not employment. That is involuntary servitude by private instrument.

## B. The Agreement Violates the First Amendment by Imposing a Lifetime Gag Clause and Appropriating Plaintiff's Identity

Sections 3 and 4 of the Agreement purport to:

- Assign perpetual rights to Plaintiff's name, image, voice, and likeness without compensation,

- Bar all future "disparaging" remarks about the company without definition, exception, or end date.

These provisions constitute:

- A form of compelled silence,

- A prior restraint on truthful speech,

- And a contractual surrender of expressive identity.

The Fourth Circuit's ruling in *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 223 (4th Cir. 2019), establishes that:

> "Restrictions on truthful speech, even when privately negotiated, are presumptively invalid and violate public policy."

A contract that forbids a former employee from criticizing their employer—truthfully or not—and that assigns their name and image in perpetuity, is not a valid employment agreement. It is a private speech code enforced by legal threat. It fails both the First Amendment and basic principles of privacy, autonomy, and dignity.

## C. The Agreement Was Procured Through Fraudulent Inducement and Constructive Misrepresentation

Under Alabama law, a party may not rely on false statements to induce another into signing a contract. Section 11.viii of the 2025 Agreement states:

> "Employee has had the opportunity to consult independent legal counsel and is signing this Agreement knowingly, voluntarily, and without confusion."

This representation is demonstrably false.

Plaintiff was:

- Given only 72 hours to sign the Agreement (over a weekend),

- Denied access to counsel,

- Prevented from negotiating any term,

- And unable to retrieve the Agreement after signing, as it disappeared from the HR platform.

Memorandum-5

These are textbook conditions for a claim of **fraud in the inducement** under Alabama law. As codified in Ala. Code § 6-5-101 (1975):

> "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, constitute legal fraud."

Additionally, under *Ex parte Thicklin*, 824 So. 2d 723 (Ala. 2002), constructive misrepresentation arises where a party signs under conditions that deny meaningful understanding or negotiation. This applies here.

Even more troubling, the Agreement required Plaintiff to **affirm** the very conditions that were never offered- legal review, time, and understanding. That is not agreement. It is a coerced confession inserted to give legal cover to a one-sided instrument.

### D. The Agreement Is Unconscionable Under Alabama Law

Alabama recognizes two types of unconscionability: procedural and substantive. A contract may be voided where either is present in extreme form, or where both exist in combination.

> "A contract is unconscionable when one party has an absence of meaningful choice and the terms unreasonably favor the other."
> — *Ex parte Thicklin*, 824 So. 2d 723, 731 (Ala. 2002)

**Procedural unconscionability:**

- Plaintiff had no meaningful opportunity to review the Agreement before signing;

- No ability to negotiate;

- No access to legal counsel;

- And was under threat of immediate termination.

**Substantive unconscionability:**

- The Agreement demands intellectual property assignments in perpetuity;

- Compels silence and identity transfer;

- Waives due process and jury trial rights;

- And falsely states that Plaintiff signed with full understanding.

These are not technical defects. They are deliberate structural features of a contract designed to operate not as an agreement, but as a **mechanism of forfeiture**.

### E. Buc-ee's Breached Its Own Agreement Before Attempting to Enforce It

Section 11.a.iii of the 2025 Agreement requires:

- A formal written Notice of Dispute,

- A 60-day informal resolution period,

- And a settlement conference prior to enforcement or arbitration.

Buc-ee's did none of these. Instead, it issued a unilateral **destruction demand** on March 24, 2025, without notice, without hearing, and without initiating the required process.

As held in *Graybar Elec. Co. v. Specialty Constr. & Design, Inc.*, 285 So. 3d 271, 281 (Ala. 2019):

> "A party cannot demand enforcement of a contract it has itself breached."

By bypassing the procedural safeguards it included, Buc-ee's forfeited its right to enforce any part of the Agreement. That includes its arbitration provision, destruction order, and intellectual property claims.

### F. The Arbitration Clause, Jury Waiver, and Class Action Waiver Are Constitutionally and Contractually Invalid

Section 11 of the 2025 Agreement combines multiple waivers designed to eliminate the employee's access to public justice. These include:

1. **Waiver of Jury Trial**

2. **Mandatory Binding Arbitration**

Memorandum-7

3. **Arbitration of Arbitrability**

4. **Class Action Waiver**

Each clause is problematic on its own. Together, they create a **closed legal regime** that blocks due process, silences redress, and structurally favors the employer.

**1. Waiver of Jury Trial**

"Employee and Company hereby knowingly waive their right to trial by jury…"

This waiver is invalid because:

- It was not knowingly or voluntarily executed;

- Plaintiff was given no counsel, no review time, and no opt-out;

- The clause falsely states Plaintiff had an opportunity to consult an attorney — a material misrepresentation used to simulate informed consent.

**2. Mandatory Arbitration**

The Agreement states that "all disputes… shall be submitted to binding arbitration," including constitutional claims and disputes concerning the Agreement itself. This strips employees of access to public courts - and imposes a privatized system where the employer defines the rules.

**3. Arbitration of Arbitrability**

Even the question of **whether arbitration is valid** must itself be arbitrated. This circular structure eliminates judicial oversight and renders even threshold questions inaccessible to the courts.

**4. Class Action Waiver**

"Employee waives any right to file or proceed as part of a class action or representative proceeding…"

This clause suppresses systemic redress, making it impossible for employees to pool resources or challenge unlawful corporate behavior collectively.

Taken together, these provisions are not legitimate waivers. They are **structural barriers to justice**, fraudulently induced, and unconscionably applied.

Memorandum-8

### G. The Agreement Is Invalid Because No Rational Employee Could Have Understood or Consented to Its Terms

At the heart of Plaintiff's challenge is the absence of informed consent. The Agreement is not merely overreaching — it is written and administered in such a way that no rational person who understood its implications would willingly sign it.

To illustrate this, Plaintiff provides the following representative sample of questions that could be asked of any hourly employee who signed the same Agreement. These questions reveal the structural impossibility of informed consent:

**Representative Questions Demonstrating Lack of Informed Consent**

1. Were you informed that signing the Agreement permanently waived your right to a jury trial, even for future civil rights claims — no matter what might happen to you in your future experience as an employee at Buc-ee's?

2. Did anyone tell you that Buc-ee's could claim ownership over anything you create — even on your own time — if it "relates" to their business, even if you made it with materials you purchased, but that Buc-ee's can now, if you sign this, claim it's theirs if you so much as thought of it and wrote it down?

3. Were you offered any opportunity at all — even five minutes — to consult an independent attorney before signing?

4. Were you told that failure to say otherwise by writing them an email and sending a letter (both) within 24 hours meant Buc-ee's could legally claim you have no pre-existing rights — meaning you have no legal ownership claims over anything you have said, done, or accomplished since the day you were born?

5. When you signed the Agreement, did you understand that by signing, you gave Buc-ee's an irrevocable Power of Attorney to act in your name in matters which served its own interests, and that "irrevocable" means you can never take it back — it's for life?

6. When you signed, did you know you gave Buc-ee's, for free, the right to use your name, voice, and image forever, "for any lawful purpose," even after you quit — without paying you — and that you did this "irrevocably," so you can never get your privacy back from them, even after you are no longer an employee, and that you also promised to defend

Buc-ee's even if they misused your name, voice, or image — also without pay?

7. Were you aware when you signed that you gave Buc-ee's the right to demand you destroy personal creative work and writings — with or without compensation — with no reimbursement for the cost of your work and writings, if they didn't "ask" you to produce them, and even if you created them off the clock?

8. Did anyone explain that by signing the Agreement, you agreed that even the question of whether arbitration is valid must itself be arbitrated — and cannot be taken to court?

9. Were you told that the Agreement would immediately vanish from your HR website after you signed it — and that you wouldn't be allowed to go online and review the wordy 15-page document and think about all the rights you waived when you signed it, or even be able to use it to follow its directions for resolving disputes?

10. Were you informed that the non-disparagement clause prohibits even truthful speech about your experiences at Buc-ee's — and that at the beginning of your employment, before you had any actual experience working at the company, you were making a legally binding promise to never say any bad thing about Buc-ee's for the rest of your life, even after you are no longer an employee, and even if you witness an official at Buc-ee's do something illegal?

11. If you had fully understood all of the foregoing, would you still have signed the Agreement?

## IV. CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully submits that the 2023 and 2025 Buc-ee's Agreements are not contracts in any lawful or mutual sense, but instruments of legal compulsion, economic coercion, and constitutional infringement. They were drafted and deployed not to clarify duties, but to suppress rights, erase authorship, and shield Defendant from accountability through false consent, structural silence, and manufactured waiver.

The provisions at issue:

- Violate the Thirteenth Amendment by compelling post-employment intellectual and legal labor without compensation or revocability;

- Violate the First Amendment by suppressing truthful speech and appropriating identity;

- Violate the Fifth Amendment and Alabama law through fraudulent inducement and constructive misrepresentation;

- And violate basic principles of contract by denying negotiation, legal review, or procedural fairness.

Plaintiff therefore respectfully requests that this Court:

1. Declare the 2025 Agreement void and unenforceable in whole;

2. Declare Plaintiff the rightful and sole owner of the intellectual property disclosed in Exhibit B;

3. Alternatively or pending ruling on (1), above, enjoin Buc-ee's from enforcing any clause of the 2023 or 2025 Agreement against Plaintiff, including its March 24, 2025 destruction demand;

4. Prohibit further reliance on false consent mechanisms, post-employment gag clauses, and identity assignments made under threat;

5. Award compensatory and punitive damages in an amount to be proven at trial;

6. And grant such other and further relief as justice may require.

Respectfully submitted,

**John K. Pedersen**
Pro Se Plaintiff
1080 Montevallo Road, #220
Leeds, Alabama 35094
pjump56@gmail.com
717-891-0607

May 26, 2025

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

John K. Pedersen, Plaintiff

v.

Buc-ee's Ltd., Defendant

Case No. _____

## TABLE OF SUPPORTING LEGAL AUTHORITIES

*(Submitted in support of Plaintiff's Complaint and Memorandum of Law)*

**Dated:** May 25, 2025

**Respectfully submitted,**

**John K. Pedersen**
*Pro Se Plaintiff*
1080 Montevallo Road, #220
Leeds, Alabama 35094
pjump56@gmail.com
717-891-0607

## TABLE OF SUPPORTING LEGAL AUTHORITIES

### I. Cases

- **United States v. Kozminski**, 487 U.S. 931 (1988)
  *Defines involuntary servitude under federal law as requiring coercion so severe that it overcomes an individual's will, including psychological coercion or abuse of legal process.*

- **Overbey v. Mayor of Baltimore**, 930 F.3d 215 (4th Cir. 2019)
  *Held that non-disparagement clauses in settlement agreements may function as unconstitutional prior restraints on speech, particularly where there is a significant imbalance of power.*

- **Board of Regents v. Roth**, 408 U.S. 564 (1972)
  *Clarifies that due process is required when government or quasi-public action deprives someone of liberty or property interests, including reputation and livelihood.*

- **Weatherly v. Hunter**, 510 So. 2d 151 (Ala. 1987)
  *Established that civil conspiracy can be inferred from coordinated conduct and shared interest in executing a wrongful purpose.*

- **Ex parte Alabama Dept. of Transportation**, 764 So. 2d 1263, 1270 (Ala. 2000)
  *Recognized that allegations of fraudulent misrepresentation and conspiracy to defraud can proceed where multiple actors participate in creating or perpetuating the falsehood.*

- **GE Capital Aviation Servs., Inc. v. Pemco World Air Servs., Inc.**, 92 So. 3d 749, 763 (Ala. 2012)
  *Confirmed that a conspiracy to defraud may arise even without explicit agreement, if conduct shows coordinated deception.*

### II. Statutes

- **42 U.S.C. § 1983**
  *Provides a federal remedy for deprivations of constitutional rights under color of state law or under private action where constitutional rights are implicated.*

- **28 U.S.C. § 2201**
  *Grants federal courts the power to issue declaratory judgments in actual controversies, even when further relief is not immediately sought.*

- **18 U.S.C. § 1589**
  *Defines and prohibits forced labor, including coercion through abuse of legal process, threats, or manipulation of fear.*

- **18 U.S.C. § 241**
  *Criminalizes conspiracies to deprive a person of rights secured by the Constitution or federal law, including under color of law or private collusion.*

- **Ala. Code § 6-5-101 (1975)**
  *Defines actionable fraud as a willful or reckless misrepresentation of a material fact, relied upon to the detriment of the other party.*

## III. Constitutional Provisions

- **First Amendment (U.S. Const. amend. I)**
  *Protects the right to free speech and prohibits both government and, under some circumstances, private actors from enforcing silence through coercive agreements.*

- **Fifth Amendment (U.S. Const. amend. V)**
  *Guarantees due process before a person can be deprived of life, liberty, or property by legal or quasi-legal process.*

- **Thirteenth Amendment (U.S. Const. amend. XIII)**
  *Prohibits slavery and involuntary servitude, including labor compelled by coercion, threat, or fraudulent contracts.*